V. M. C. SILVA, RESPONDENT, *v.* W. L. PICKARD
AND HENRY COHN, F. H. AUERBACH AND S.
AUERBACH, COPARTNERS AS H. COHN & COM-
PANY, TERRITORIAL WOOL ASSOCIATION
AND F. H. AUERBACH DEFENDANTS, OF WHOM
H. COHN & COMPANY AND F. H. AUERBACH
ARE APPELLANTS, AND W. L. PICKARD, RESPOND-
ENT.

EVIDENCE.—REVERSIBLE ERROR.—SELF-SERVING DECLARATIONS.—
In an action between the members of a copartnership known as
the Territorial Wool Association, the merits of the controversy
turned upon the fact whether or not a certain resolution had
been adopted at a certain meeting of the association.    S. and
P. testified that it had been adopted and produced it in writ-
ing at the trial.    C. and A. testified that no such resolution had
been adopted; that they had never seen it before until pro-
duced at the trial, and claimed that it was a fabrication of
recent date.    This claim was met by testimony of third per-

sons that S. and P. had stated repeatedly to them soon after the time at which such resolution was claimed to have been adopted, that such resolution had been adopted by the association. *Held,* that the admission of such testimony was reversible error when the record showed that such evidence had a controlling influence in the decision of the case, and that S. and P. at the time of making such statements were subserving their own private interests and were both subject to disturbing influences, and the ultimate effect and operation from a change of circumstances could have been, and probably were, foreseen by them.

(No. 415.   Decided June 4, 1894.   37 P. R. 86.)

APPEAL from the district court of the third judicial district, Hon. Charles S. Zane, *Judge.*

Action by V. M. C. Silva against W. L. Pickard and Henry Cohn, F. H. Auerbach and S. Auerbach, copartners as H. Cohn & Co., Territorial Wool Association and F. H. Auerbach, for a dissolution of the copartnership known as the Territorial Wool Association and for an accounting. From the judgment of the district court confirming the report of Waldemar Van Cott, referee, defendants H. Cohn & Co., and F. H. Auerbach, appeal. *Reversed.*

*Messrs. Marshall & Royle* and *Mr. W. H. Dickson,* for appellants.

The court erred in admitting the self-serving declarations. To the general rule that the prior declarations of a witness made out of court are not admissible as evidence in his favor, there are two exceptions. *First*—Where the witness is sought to be impeached by statements claimed to have been made by him out of court which are not in harmony with his sworn testimony, and it is claimed that a different version of the transaction given by the witness upon the trial is due to the fact that he has an interest

at the time of the trial in the result of the litigation which did not actuate him at the time he made the declarations. *Second*—Where it is claimed that the testimony of the witness is a recent fabrication, born of his interest in the cause or his relation to the parties. 1 Thomp. on Trials, §§ 573-4-5-6; *Read* v. *Spaulding,* 42 N. H. 114; *Robb* v. *Hackley,* 23 Wend. 50; *Stolp* v. *Blair,* 68 Ill. 541; *Commonwealth* v. *Jenkins,* 10 Gray, 485; 2 Tay. on Ev. § 1476; 1 Whar. Ev. § 570; *People* v. *Doyell,* 48 Cal. 85; *Munson* v. *Hastings,* 12 Vt. 346. It appears by the record affirmatively, that Silva and Pickard at the time they made the statements, had an interest or motive which would prompt them to speak untruly. *Mason* v. *Destal,* 88 Cal. 396.

*Messrs. Sutherland & Howatt,* for Pickard, respondent.

*Mr. O. W. Powers* and *Mr. Ogden Hiles* and *Messrs. Brown & Henderson,* for Silva, respondent.

The finding that the resolution was adopted is a conclusion arrived at on a substantial conflict of the evidence. In such cases the appellate court defers to the trial court and will not disturb the decision. *People* v. *Peacock,* 5 Utah, 237; *United States* v. *Harris,* Id. 436; *Mining Co.* v. *Mining Co.,* Id. 3; *Walker* v. *Popper,* 2 Utah, 281; *Dewey* v. *Snyder,* Id. 344. The declarations of Silva and Pickard made soon after the adoption of the resolution were not self-serving. They were made before there was any anticipation that there would be a loss on the wool they were engaged in buying. Had they anticipated the loss, they would have made no purchases at all. They were anticipating a profit. The case being one decided by the court, there being sufficient competent evidence to sustain the findings, exceptions to the admission of irrelevant, incompetent or immaterial evidence will not be sustained. *Mining Co.* v. *Haws,* 7 Utah, 515; *Foundry Co.* v. *Mammoth*

*Mining Co.*, 6 Utah, 351; *Rogers* v. *Cook*, 8 Utah, 123; *Insurance Co.* v. *Friedenthal*, 27 P. R. 88. The testimony of the so-called self-serving or *ex parte* declarations of Silva and Pickard was admissible under the exceptions to the general rule. *Hays* v. *Cheatham*, 6 Lea, 10; Taylor on Evidence, § 1330; 1 Whar. Ev. § 370; 1 Greenl. Ev. § 469; 2 Phillips Ev. p 445, 446; 1 Starkie Ev. p. 149; *Ellicott* v. *Pearl*, 10 Pet. 412, 439; *Robb* v. *Hackley*, 23 Wend. 50–54; *Anderson* v. *Jones*, 10 S. & R. 410; *Cook* v. *Curtis*, 6 H. & J. 93; *McAleery* v. *Horsey*, 35 Md. 441; *Mollonee* v. *Duff*, 72 Md. 283; *Gates* v. *People*, 14 Ill. 434; *Stolp* v. *Blair*, 68 Ill. 543; *Coffin* v. *Anderson*, 4 Blackf. 395; *Daly* v. *State*, 28 Ind. 285; *Clark* v. *Bond*, 55 Ind. 169; *State* v. *Vincent*, 24 Iowa, 570–575; *Green* v. *Cochran*, 43 Iowa, 544–547; *People* v. *Doyell*, 48 Cal. 85; *Barkly* v. *Copeland*, 74 Cal. 1; *Gibbs* v. *Linsley*, 13 Vt. 208; *Clinton* v. *Sage*, 57 N. Y. 640; *State* v. *Cruise*, 19 Iowa, 312–317; *Card* v. *Foote*, 56 Conn. 369. The testimony of Raybould and other witnesses as to the declarations of Silva and Pickard not only falls within one of the rules making it admissible, but under all of them. ·1, The declarations were made soon after the transaction in litigation, namely, the adoption of the resolution, and before Silva and Pickard had been subjected to any disturbing influences. 2, The declarations were antecedent to their testifying as witnesses and antecedent to any controversy between the parties. 3, The declarations were made at a time when the motive that existed for Silva and Pickard to misstate the facts at the trial did not exist. 4, The declarations were made at a time before their ultimate effect and operation, arising from a change of circumstances, could have been foreseen. There is nothing in the contention of the appellants that the rule only applies to witnesses not parties to the suit. When the statute makes parties competent as witnesses,

the law applicable to witnesses becomes applicable to them. *Hays* v. *Cheatham, supra; McAleery* v. *Horsey, supra; State* v. *Cruise, supra.*

PER CURIAM: This action was brought for the settlement of what is claimed to be a partnership account, and the distribution of a considerable sum of money, in the hands of Frederick H. Auerbach, belonging to the partnership. From the record it appears that on or about the 1st day of May, 1883, W. L. Pickard, Henry Cohn, and F. Auerbach and brother, constituting the firm of H. Cohn & Co., and V. M. C. Silva, for the purpose of trading in wool, as partners, entered into written articles of copartnership, as copartners under the name and style of the "Territorial Wool Association," specifying in such articles that they enter into this agreement of copartnership "each for himself, and to each other." These articles are drawn in the shape of a constitution and by-laws, and are signed by the parties, and form a part of the complaint. Section 11 of these by-laws is in the following words, to-wit: "Sec. 11. The profits, if any, after deducting the expenses incurred in selling the wools, such as interest, brokerage, insurance, storage, labor, and other incidental expenses, shall be divided equally into three shares between W. L. Pickard, H. Cohn & Co., and V. M. C. Silva, the three members or firms of the association subscribing to these articles of association, and the losses, if any, shall also be equally divided." Section 12 of these by-laws further provides as follows, to-wit: "Sec. 12. As soon as the whole amount of wool is closed out in Boston, the executive committee shall prepare a statement of all sales and expenses pertaining thereto, and submit the same to the association, and if any funds remain to the credit of the association, or the account with the Mass. Loan & Trust Co. representing the same, the same shall

be subject to draft of the president of the association, who, as soon as he is notified that the same has been duly honored, shall subdivide the same into equal parts between W. L. Pickard, H. Cohn & Co., and V. M. C. Silva." Said agreement was for the period of one year, but it is agreed by all parties that, in so far as the original articles of agreement are concerned, they remain in full force between the parties up to the trial of this cause. Under the pleadings, and at the trial, Silva and Pickard alleged an addition thereto, made in 1887, of the following resolution, to-wit: "Resolved, that, in view of the large amount of wool carried over from last season, we limit our entire purchase of wool for this season to one million (1,000,000) pounds of wool equally between us." Under the pleadings, and at the trial, H. Cohn & Co. denied that said last-named resolution was passed, or that the original articles of copartnership had been altered in any particular.

It seems that all parties to the suit stand upon the common ground that, if the resolution was in force (part affirming it was, and part denying), that this was the only change in the original articles, and, with the exception of the resolution (if that was an exception), the Territorial Wool Association was acting and conducting its business under the original articles. The association made a good deal of money in the years 1883, 1884, and 1885, and the profits were shared equally between Silva, Pickard, and H. Cohn & Co. In 1886 the association lost money, but, under the articles of the association, the losses were apportioned in the same manner. In the early part of the season of 1887, the price of wool in the eastern market was low, but as the season advanced telegrams were received by the association here stating a heavy advance in the price of wool in the eastern market. In consequence of this news, all the members of the association commenced buying wool freely, H. Cohn & Co. purchasing 701,403 pounds, Pickard,

366,571 pounds, and Silva, 330,398 pounds. When these purchases reached a market, wool had fallen in price, and remained so low that the wool of the Territorial Wool Association was closed out in the east at a very heavy loss. In winding up the settlement with their eastern consignees, there was in January, 1886, remitted back to the association here a large sum of money, to be distributed to those entitled to it, and, pending distribution, placed in F. Auerbach's keeping, bearing interest. The amount so held by Auerbach, Silva and Pickard place at $30,000, and H. Cohn & Co. at $27,804.42. After the receipt of said money by Auerbach, H. Cohn & Co. attempted to obtain a settlement from Pickard and Silva, upon the basis that H. Cohn & Co. should bear one-third of the losses, Pickard one-third, and Silva one-third, according to the terms of the original articles; upon which basis Pickard would have been entitled to $381.26 out of the money in F. Auerbach's hands, H. Cohn & Co. would have been entitled to all the residue of the money in F. Auerbach's hands, and also to an additional contribution and payment to them, from Silva, of $5,533.02; said Silva being that much behind his equal proportion of one-third of the losses.

Finally, in the latter part of 1889, or the early part of 1890, Silva claimed and asserted, and, as far as H. Cohn & Co. claimed to have any knowledge thereof, for the first time claimed and asserted that the resolution in regard to one million pounds of wool had been passed and adopted by the association, and that, having been so adopted, the effect of it was to throw the whole burden of the losses for the excess of one million pounds in buying upon the parties who bought more than one-third of said one million pounds. On such claim being made by said Silva, H. Cohn & Co. demanded of Silva the evidence of the passage of any such resolution, and denied that any such resolu-

tion was passed. But Silva did not then, nor at any time before the bringing of this suit, produce to H. Cohn & Co. any evidence of the passage of said resolution, but claimed it was passed, and on the trial of this action Silva produced for the first time, as such original resolution, a sheet of paper, in his own handwriting, but not signed by any one, which was as follows, to-wit: "Salt Lake, Utah, May 4, 1887. At a meeting of the Territorial Wool Association, held this day, at the office of W. L. Pickard, the following members being present: F. H. Auerbach, W. L. Pickard, H. Cohn, V. M. C. Silva,—the following resolution was unanimously adopted: Resolved, that, in view of the large amount of wool carried over from last season, we limit our entire purchase of wool for this season to one million pounds (1,000,000) of wool, equally between us. There being no further business, we adjourned." Pickard joined Silva in the position taken by Silva as to the resolution and the effect thereof, and on March 25, 1892, this suit was brought by Silva, plaintiff, v. the defendants. H. Cohn & Co. answered the complaint and filed a cross complaint. Pickard answered complaint, and filed a cross complaint. Silver and Pickard severally answered the cross complaint of H. Cohn & Co. H. Cohn & Co. answered the cross complaint of Pickard. By reason of the losses which ensued, the plaintiff claims, defendant Pickard in his answer admits, and in his own complaint alleges, the other defendants deny, and the referee decided, that, as to the purchases of the parties up to the agreed limit, the losses should be equally divided; that each member of the partnership should bear the loss on all purchases by himself in excess of 333,333 pounds to each party. The decree below declares the losses and disposes of the money between the parties upon these principles. Defendants Cohn & Co. appeal from this decree. Silva and Pickard, who seem to have acted together in the proceeding; and to have a com-

mon interest, and are satisfied with the decree, are respondents.

It appears from the testimony that Pickard was acting as secretary and F. H. Auerbach as president of the association during the entire period of this relationship; that the resolution of May 4, 1887, was in the handwriting of Silva, and not in the handwriting of Pickard, the secretary; it was not signed by any one, nor copied into any record book, but was left as produced at the hearing. It is not claimed that one week's notice was given prior to its alleged adoption, as required by article 9 of the constitution, nor is it shown that Pickard, the secretary, kept or made the record as required by article 6 of the constitution. Nor does the proof establish the fact that this resolution was adopted by the executive committee under section 13 of the by-laws. Both Silva and Pickard testify that the resolution was adopted at the time of its date, when all the parties except Samuel Auerbach were present, at a meeting of the association, and was written down by Silva because he was a ready penman. The appellants, Auerbach and Cohn, positively assert that such resolution was never adopted at any meeting of such association; that it was never assented to by them, and that they knew nothing of its pretended existence until in the latter part of 1889, or fore part of 1890, when Silva for the first time claimed there was such a resolution; and that it was never seen by either until the hearing of the case. It also appears that after the 4th of May, 1887, a dispatch was received by Pickard from his son in Boston advising the probable rise in the price of wool, and that in accordance therewith, and with the advice of all members, each party commenced the purchase of wool to a large extent, with the approbation of each partner. Soon after these purchases by each party, as before stated, wool declined heavily, to the great loss of the association and

the members thereof.    Whether this resolution was in fact
adopted by the association, as claimed by Silva and Pick-
ard, was about the only matter in controversy between the
parties at the hearing.    For the purpose of corroborating
Silva and Pickard, Mr. Reybould was permitted, against
defendants' objection, to testify that in May, 1887, Pick-
ard and Silva separately but repeatedly stated to him,.
while cashier of the Union National Bank, and at a time
when they desired credit, or an extension of time on pay-
ment of their indebtedness on account of advances made
by the bank to them for wool purchases, that the mem-
bers of the wool association had agreed and determined to
limit the purchase of wool for the season of 1887 to
1,000,000 pounds; and for the same purpose, and against
the defendants' objection, the witnesses Knauss and West
were permitted to testify that in May, 1887, Silva, the
plaintiff, made a like statement to them.    The admission
of this testimony is assigned as error.

Upon this subject, the court says, in *People* v. *Doyell*, 48
Cal. 91, that "a witness cannot be confirmed by proof
that he has given the same account before, for his mere
declaration is not evidence.    His having given a different
account, although not upon oath, necessarily impeaches
either his veracity or his memory; but his having asserted
the same thing does not in general carry his credibility
further than, nor so far as, his oath.    Such declaration
may, however, be admissible in contradiction of evidence
tending to show that the account is a fabrication of late
date, when it may be shown that the same account was
given before its ultimate effect and operation (arising from
changed circumstances) could have been foreseen; and also,
perhaps, in other peculiar cases." In *Stolp* v. *Blair*, 68
Ill. 541, the general rule, with its exceptions, is stated in
the syllabus as follows: "Proof of the declarations of a
witness made out of court in corroboration of testimony

given by him on the trial of a cause is, as a general rule, inadmissible, even after the witness has been impeached or discredited; but, where the witness is charged with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist, or when motives of interest would have induced him to make a different statement of facts."

In *Com.* v. *Jenkins,* 10 Gray, 485, it is said that "where a witness is sought to be impeached by cross-examination or independent evidence, tending to show that at the time of giving his evidence he is under a strong bias or in such a situation as to put him under a sort of moral duress to testify in a particular way, it is competent to rebut this ground of impeachment, and to support the credit of the witness, by showing that when he was under no such bias, or when he was free from any influence or pressure, he made statements similar to those he had made at the trial." In 2 Tayl. Ev. § 1476, it is said: "But evidence that he [the witness] has on other occasions made statements similar to what he has testified in the cause is not admissible, unless he be charged with the design to misrepresent, in consequence of his relation to the party, or to the cause; in which case it may be proper to show that he has made a similar statement before that relation existed." In 1 Whart. Ev. § 570, it is said: "Statements made by a witness corroborating his evidence upon the trial, such statements being uttered soon after the transaction, and at a time when the witness could not have been subject to any disturbing influences, are competent when proof has been offered to impeach him by showing that he had recently fabricated the narrative or had testified corruptly." See, also, *People* v. *Doyell,* 48 Cal. 85; *Munson* v. *Hastings,* 12 Vt. 346; *Ellicott* v. *Pearl,* 10 Pet. 412, 438, 439; *Conrad* v. *Griffey,* 11 How. 480; *Queen* v. *Hepburn,* 7 Cranch, 290;

*Robb* v. *Hackley,* 23 Wend. 50; *Reed* v. *Spaulding,* 42 N.
H. 114; 1 Thomp. Trials, §§ 573, 574; 1 Greenl. Ev. § 469;
*Mason* v. *Vestal,* 88 Cal. 396, 26 Pac. 213.

The admission of this class of testimony is considered
dangerous, and the exception to the rule should not be
extended, except it be in extreme cases and where the
rejection of it would produce real and manifest wrong.
And in no case should such evidence be admitted where it
appears that the party making such declarations has any
interest or motive in making them, or where it does not
satisfactorily appear that the account given by the witness
which is subject to be shown in corroboration was made
at a time before its ultimate effect and operation arising
from a change of circumstances could have possibly been
foreseen, or where the witness is not shown to be free
from any influence, pressure, or interest in making the
declarations. At the time these statements were shown to
have been made, both Silva and Pickard were parties to
the contract, and directly interested in the purchase and
sale of wool as members of this association. They were
both heavily in debt in consequence of their purchases
under their arrangement out of which this litigation grew.
They were both asking extensions at the bank. Reybould
testified that Silva and Pickard were each indebted to the
bank for over $10,000 at this time, and that the effect of
the statements made by Silva and Pickard to him and to
the bank as to the passage of such resolution to limit the
purchase of wool by the association to 1,000,000 pounds
for the year 1887 was to induce the bank to extend their
credit, and that credit was extended to them by the bank
on the strength of such representations made by them on
that subject. For this court to extend the rule making
admissible unsworn declarations of a party to the cause,
under the circumstances that these statements are shown
to have been made, would be to open the doors to fraud,

and make easy the way by which a designing schemer and dishonest party could readily overreach his antagonist, and use the courts of justice as an instrument to advance his dishonest purposes.

After considering all the facts and circumstances surrounding this transaction, we have come to the conclusion that these statements were made by Silva and Pickard at a time when their own interest was being served by the making of such statements; at a time when they were both subject to disturbing influences, and when the ultimate effect and operation arising from a change of circumstances could have been, and probably was, foreseen by both. This testimony doubtless had a controlling influence in the decision of the case. We think the objection taken to the admission of this testimony before the referee should have been sustained, and that the admission of such testimony was error. There are many other assignments of error, but we consider the one passed upon decisive of the case. It is the opinion of this court that the judgment of the court below should be set aside, and a new trial granted.

We concur: MERRITT, C. J., BARTCH, J., SMITH, J., MINER, J.