(September 20, 1911.)

## STATE, Respondent, v. LOUIE MOON, Appellant.

[117 Pac. 757.]

DEFENSE—CORROBORATORY  STATEMENTS — TRANSLATIONS — REASONABLE
·  ·  DOUBT—VIEW BY JURY—ABSENCE OF TRIAL JUDGE—INSTRUCTIONS.

(Syllabus by the court.)

1. A defendant in a criminal trial is not permitted by way of
defense to show by conjectural inferences that some other person
might have committed the offense for which he is on trial, or that
some person other than himself is more probably guilty.

2. If it be charged that the testimony of a witness is a recent
fabrication, and impeaching testimony is admitted for the purpose
of showing statements contradictory to those given as a witness, the
party calling such witness against whom such contradictory state-
ments were proved may show by further testimony, other than the

witness testifying, that such witness had made statements consistent with those given as a witness, if such were made prior to the time fixed when it is claimed the testimony was fabricated.

3. An objection made that a witness making a translation of a foreign language into English is not competent and that his translation is not proper, is not well taken in the absence of any affirmative showing so indicating. .

4. In defining the words "reasonable doubt," as used in the court's instructions, it is not error as a part of such definition to use the following language: "You are not at liberty to disbelieve as jurors, if from the evidence you believe as men. The oath which you have taken imposes upon you no obligation to doubt when no doubt would exist, if no oath had been administered."

5. Instructions given and refused examined and no error found therein.

6. When, after a criminal action has been submitted to a jury to consider their verdict, they are returned into open court and request to be permitted to view the premises in which the offense charged is said to have occurred, and the state and defendant consent that the court may at such time make an order as requested, *held,* that such defendant so consenting cannot be heard to assign the making of such order as error.

7. When, upon a view of the *locus in quo* being taken by the jury, they are not accompanied by the trial judge, the failure of the defendant to object in time to such fact thereby defeats his right to complain.

8. The following portion of an instruction given to the jury by the court held to be incorrect: "And if a large majority of your number are on one side or the other of this case, the minority should consider whether their doubts are reasonable or whether they may not reasonably be mistaken."

9. *Held,* that the verdict is not contrary to the evidence.

APPEAL from the District Court of the Third Judicial District for the County of Ada.   Hon. Fremont Wood, Judge.

Defendant was charged with crime of assault with intent to commit murder and from a conviction of assault with a deadly weapon appeals. *Affirmed.*

Chas. F. Koelsch, and E. J. Frawley, for Appellant.

It is always permissible for the defendant to show, if he can, that some third person did in fact commit the crime

charged against him. (1 Wigmore, Ev., sec. 140, note 1; *State v. McLain,* 43 Wash. 267, 86 Pac. 390.)

Instruction No. 12, given by the court to the jury, practically relieves the jury from the obligation of their oaths. (*Siberry v. State,* 133 Ind. 677, 33 N. E. 681.)

By instruction No. 14 the court, in effect, told the jury that the defendant's testimony should be weighed in the balance with the fact of the great interest he had at stake in the case. An instruction like this nullifies the object sought by constitutional and statutory provisions permitting a defendant to be a witness in his own behalf. (*State v. Webb,* 6 Ida. 428, 55 Pac. 892.)

Sec. 7878, Rev. Codes, prescribes the method of a view of the premises by the jury, but this is part of the trial, and is the taking of evidence. (*State v. McGinnis,* 12 Ida. 336, (342, 343), 85 Pac. 1089.)

Sec. 1119 of the Penal Code of California is almost identical with sec. 7878, Rev. Codes, and the supreme court of California has frequently held that proceedings had thereunder were part of the trial and constituted the taking of evidence. (*People v. Bush,* 68 Cal. 623, 10 Pac. 169; *People v. Lowrey,* 70 Cal. 193, 11 Pac. 605; *People v. Yut Ling,* 74 Cal. 569, 16 Pac. 489; *People v. White,* 5 Cal. App. 329, 90 Pac. 475.)

Other courts have held that a view of the premises is the taking of evidence. (*Foster v. State,* 70 Miss. 755, 12 So. 822; *State v. Bertin,* 24 La. Ann. 46; *Nelson v. State* (Tex. Cr.), 58 S. W. 107.)

If viewing the premises is receiving evidence, and is part of the trial of the case, it was error to permit the jury to view the premises after the case had been closed and in the absence of a motion to reopen the same, and no showing that the premises at the time of the view were in the same condition that they were in at the time of the alleged crime. (*Mitchell v. Rowley,* 63 Misc. 643, 118 N. Y. Supp. 751.)

If viewing the premises is part of the trial, and is receiving evidence, the judge of the court ought to have been present, and his absence is such error as alone entitles the defendant to a new trial. (*People v. White,* 5 Cal. App. 329, 90 Pac.

475; 17 Ency. of Law, 2d ed., 720; *O'Brien v. People,* 17 Colo. 561, 31 Pac. 230; *Bateson v. State,* 46 Tex. Cr. 34, 80 S. W. 88; *Slaughter v. United States,* 5 Ind. Ter. 234, 82 S. W. 732.)

The failure of defendant to object was practically extorted from him. (17 Ency. of Law, 2d ed., 721, note 4.)

Even though it could be shown that the defendant had positively consented to the absence of the judge during that part of the trial, such consent in a felony case is not binding on the defendant. (*O'Brien v. People,* 17 Colo. 561, 31 Pac. 230; *Graves v. People,* 32 Colo. 127, 75 Pac. 412, 2 Ann. Cas. 6; *Slaughter v. United States,* 5 Ind. Ter. 234, 82 S. W. 732.)

The giving of instruction specified as error No. 46 was urging the minority to give up their honest convictions as to the question of the defendant's guilt, and to agree with the majority. It urged an agreement and brought it about, against law and evidence. (*People v. Engle,* 118 Mich. 287, 76 N. W. 502; *O'Neal v. Richardson,* 78 Ark. 132, 92 S. W. 1117; *St. Louis v. Bishard,* 147 Fed. 496, 78 C. C. A. 62.)

D. C. McDougall, Attorney General, Chas. P. McCarthy, Prosecuting Attorney for Ada County, J. H. Peterson and O. M. Van Duyn, Assistants to the Attorney General, K. I. Perky and J. R. Smead, for Respondent.

The evidence of the threatening letters was properly excluded. It was too remote, under all the authorities, to be permitted to go in. (*Greenfield v. People,* 85 N. Y. 75, 39 Am. Rep. 636; *State v. Fletcher,* 24 Or. 295, 33 Pac. 575; 12 Cyc. 399; *Buel v. State,* 104 Wis. 132, 80 N. W. 78; *Crookham v. State,* 5 W. Va. 510.)

Instructions Nos. 12 and 14 were proper. (2 Brickwood's Sackett on Instructions, secs. 2553, 2705; *Barney v. State,* 49 Neb. 515, 68 N. W. 636.)

No precise time for the view is fixed by the statute. It may be held even after the case has been submitted to the jury, if the defendant consents. (*People v. Hawley,* 111 Cal. 78, 43 Pac. 404; 13 Ency. of Ev. 969, note 62.)

Even in the absence of a waiver on the part of the defendant to the presence of the judge during the view, the presence of the judge is not necessary during the view. (*State v. Hartley*, 22 Nev. 342, 40 Pac. 372, 28 L. R. A. 33; 13 Ency. of Ev. 975, note 73.)

If it be the law that the judge should be present at the view, still that right may be waived, and was waived in this case, by the defendant's failure to request the judge to accompany the jury or to object to his absence or take any exceptions whatsoever thereto. (*State v. Mortensen*, 26 Utah, 312, 73 Pac. 562; 13 Ency. of Ev. 975, note 95; *People v. White*, 5 Cal. App. 329, 90 Pac. 472; *State v. Reed*, 3 Ida. 754, 35 Pac. 706; *Sasse v. State*, 68 Wis. 530, 32 N. W. 849.)

WALTERS, District J.—The defendant, Louie Moon, was charged jointly with two others by an indictment returned by the grand jury of Ada county of an assault with intent to commit murder, on or about the 16th day of January, 1910, in Boise City, upon the person of one Fong Sue. Upon trial the defendant Louie Moon, was convicted of an assault with a deadly weapon, and from a judgment of the court thereon he prosecutes this appeal.

It appears that said assault was committed between the hours of 6 and 7 in the morning of January 16, 1910, and by some person or persons who had secreted themselves in the home of said Fong Sue. The prosecuting witness testified that he had been absent during the night at a lodge meeting with certain of his countrymen, and upon returning to his residence at about the hour indicated, upon entering his home he was attacked and assaulted. He ran from the building to the police station and from there was taken to a local hospital for treatment. The defendant, under his plea of not guilty, offered testimony tending to prove an alibi and to account for his whereabouts other than at or in the proximity of the residence of the prosecuting witness at the time it is alleged the assault was committed.

Such other testimony as is necessary to an understanding of this decision is set forth hereinafter.

1. Defendant sought to show that there had been dissension and a division in a local Chinese colony, a Chinese woman being the promoting cause, said to be the wife of one Wong Gow, who appeared to have difficulty in maintaining possession of his wife, and that by reason of the interest and act of the prosecuting witness taken against Wong Gow, he had incurred his bitter enmity. Certain questions were propounded to the prosecuting witness under cross-examination by counsel for defendant, aiming to show such a state of facts, and objections were made by the state and the objections sustained, and defendant assigns such rulings as error. This matter was resolved into but one phase, however, when counsel for defendant made the following offer of proof, while the prosecuting witness was under cross-examination:

"In order to make the record, we now offer to prove that something like two weeks prior to the alleged assault, this witness received from San Francisco, California, letters in which he was warned that parties there had left or were about to leave San Francisco for Boise, Idaho, with the avowed purpose of taking his life, and that these parties were friends and associates of Wong Gow."

The court sustained an objection to such proffered proof and error is predicated on such ruling. It will be noticed that the offer is made to prove threats against the life of the prosecuting witness. Who the threatening parties were is not named, or whether they had left San Francisco and had arrived in Boise or not, or whether they were in the proximity of the *locus* of the assault at the time of its commission, nor was it claimed by the offer that defendant purposed showing that such unnamed parties actually took part in the commission of the crime or were so situated that they might reasonably have done so. The ruling of the trial court in rejecting the proffered testimony of the nature indicated was manifestly correct and is hardly open to controversy. To have permitted the defendant to introduce such testimony would have been a violation of one of the basic rules of evidence as to the inadmissibility of certain collateral facts, expressed by Greenleaf in his work on Evidence in section 52, as follows:

"'This rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is, that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them; and moreover, the adverse party having had no notice of such a course of evidence is not prepared to rebut it.''

In discussing an assignment of error similar to the one here under consideration, it is said in *Greenfield v. People,* 85 N. Y. 76, 39 Am. Rep. 636, that:

''While evidence tending to show that another party might have committed the crime would be admissible, before such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tend clearly to point out someone besides the prisoner as the guilty party. Remote acts, disconnected, and outside of the crime itself, cannot be separately proved for such a purpose.''

It is said in *State v. Fletcher,* 34 Or. 295, 33 Pac. 575, in considering a like assignment of error, that:

''Indeed, there seems to be an absolute unanimity in the decisions, in holding that it is going far enough in favor of the accused to allow him to exculpate himself by showing the fact of another's guilt by some appropriate evidence, directly connecting that person with the *corpus delicti;* and, in criminal cases, mere evidence of confession of guilt by a third person, or of threats made by such person against deceased is clearly inadmissible.''

Such evidence affords no reasonable presumption or inference as to the guilt or innocence of the defendant, and is *res inter alios acta,* and the merest hearsay.

In *Carlton v. People,* 150 Ill. 181, 41 Am. St. 346, 37 N. E. 244, the court said:

''Threats of a third person other than the prisoner on trial, against the victim of the crime charged, are mere hearsay, and are inadmissible. Evidence of this character tends to draw away the minds of the jury from the point in issue, which is the guilt or innocence of the prisoner, and to excite their

prejudices and mislead them." (*State v. McLain*, 43 Wash. 267, 86 Pac. 390.)

It is held in *Alexander v. United States*, 138 U. S. 353, 11 Sup. Ct. 350, 34 L. ed. 954, that mere threats of a third person, unaccompanied by an action of a threatening nature, are irrelevant to the question of defendant's guilt. This same subject has received a most comprehensive consideration in the case of *Horn v. State*, 12 Wyo. 80, 73 Pac. 705, and an extensive *résumé* of authorities made, and it is therein said:

"And evidence of mere threats against the life of the deceased, without more, is not generally held to be competent, for the reason that it has no legal tendency to establish the innocence of the defendant on trial."

We do not understand that an orderly and unbiased judicial inquiry as to the guilt or innocence of a defendant on trial contemplates that such defendant should be permitted by way of defense to indulge in conjectural inferences that some other person might have committed the offense for which he is on trial, or by fanciful analogy to say to the jury that some one other than he is more probably guilty. We are fearful that the proffered testimony was of this sort.

2. The trial court, over the objection of counsel for defendant, permitted one Frank M. Powell, a detective and police officer, to testify on behalf of the state that at about the hour of 11 o'clock in the forenoon of the day of the assault at a hospital where the prosecuting witness had been taken, the said prosecuting witness, Fong Sue, stated to said Powell, that the defendant was one of his assailants. Also, over the objection of counsel for defendant, the court permitted one Patrick Marinan, a police officer, and a witness for the state, to testify that between the hours of 9 and 10 in the forenoon of the day of the assault, at the hospital, the prosecuting witness related to said Marinan the names of his assailants, the defendant being among those so designated. Counsel for defendant assign such rulings of the court as error.

The trial court appeared to admit such testimony and the state appeared to offer it for the reason that, prior to the admission of the evidence above indicated and while the prose-

cuting witness, Fong Sue, was on the witness-stand as a witness for the state, counsel for defendant during their cross-examination of such witness propounded to him certain impeaching questions. At such time said witness was asked if immediately after the assault and between the hours of 6 and 7 o'clock in the morning of the said 16th day of January, 1910, at the police station, he had not stated to one George Smith, a police officer, and one Joseph Beal that he did not know who assaulted him or whether such persons or person was a white man or a Chinaman; and also if on the morning of the 17th of January, 1910, the day following the assault, at the hospital, he had not stated to one E. P. Johnson that he did not know who assaulted him and did not see them but recognized one of them by his voice. The prosecuting witness denied having so stated at the time and place and to the persons indicated. It will thus be noticed that by the impeaching questions propounded the basis for the admission of the testimony offered by the state and admitted over the objection of counsel for the defendant was created by counsel for defendant themselves.

Under the facts of this case we cannot hold that the statements of the prosecuting witness, as detailed on the witness-stand by the witnesses Powell and Marinan, were properly admitted as part of the *res gestae* as urged, among other reasons, for their proper admission by the attorney general. We find a decided conflict in the courts as to whether or not the prior consistent declarations of a witness may be received in corroboration of his testimony after impeachment, as many courts hold that such testimony is but an attempt to strengthen judicial evidence by extrajudicial statements, and that as such they infringe on the general prohibition of hearsay evidence, while, on the contrary, an apparently equal number of courts hold that the previous declarations by the witness harmonizing with his testimony may be admitted after impeachment. (3 Ency. of Ev., p. 737 et seq.; 10 Ency. of Pl. & Pr., p. 329 et seq.; *Conrad v. Griffey*, 11 How. (U. S.) 480, 13 L. ed. 779; Greenleaf on Ev., sec. 469.)

A decision upon this precise rule of evidence is here rendered unnecessary, for the reason that in those jurisdictions

adopting the rule that prior consistent declarations may not be received in corroboration of the testimony of an impeached witness, certain exceptions are recognized thereto, and are held to be exceptions to such rule against the admission of such statements; one of said exceptions being that if the attack on the credibility of the witness consists of a charge that his testimony is a recent fabrication, it is always permissible to corroborate him by proving prior declarations by him to the same effect.    (Wharton on Ev., sec. 570; *People v. Doyell*, 48 Cal. 85; *Barkey v. Copeland*, 74 Cal. 1, 5 Am. St. 413, 15 Pac. 307; *Stolp v. Blair*, 68 Ill. 541; *Ellicott et al. v. Pearl*, 10 Pet. (U. S.) 438, 9 L. ed. 475; *State v. Petty*, 21 Kan. 54; *English v. State*, 34 Tex. Cr. 190, 30 S. W. 233; *State v. Flint*, 60 Vt. 304, 14 Atl. 178.)

The record discloses that at the time of passing upon the first objection made by counsel for the defendant to the admission of such testimony on behalf of the state, the court inquired of counsel for the defendant, "Is it not a fact that on yesterday you attempted to show by witness Fong Sue that he did not give the names of the parties who assaulted him until after the arrests were made?"  To which counsel for the defendant replied, "Yes, sir."  The record further discloses that the arrest of the defendant and his codefendants was not made until 4 o'clock in the afternoon of January 16th, and inasmuch as these corroborative statements are by the record shown to have been made to the witnesses Powell and Marinan in the forenoon of said day, it occurs to us that they were properly admitted under the above-mentioned exception, as it was apparently the theory of the defense, and they had so urged to the trial court, that the testimony of the prosecuting witness charging the defendant as one of his assailants was a recent fabrication.  That is, the record discloses that defendant was urging that at the time of the assault the prosecuting witness did not recognize his assailant or assailants, that he so stated to certain persons shortly after the assault, and that the designation of the defendant as one of his assailants was a fabrication of the prosecuting witness invented at some time after the assault.  Hence under such

state of facts it would be permissible for the state to show that before or prior to the time fixed by the defendant when he claimed that the testimony of the prosecuting witness was fabricated, that he had made statements in harmony with those made under oath, and contradictory to those testified to by witnesses for defendant.

In the course of the trial, two of the persons mentioned in the impeaching questions propounded to the prosecuting witness, Fong Sue, appeared as witnesses for the defendant, and testified that Fong Sue had made statements to them at the time and place indicated that he did not know who his assailants were.

The question as to whether or not Fong Sue had fabricated testimony must necessarily have become an important one in the mind of the jury, and one which would have much to do with their verdict.

As to substantiate his claim in this regard, the defendant offered the testimony of certain witnesses which would indicate his claim of fabrication to be correct, then by the same token it must follow the state should be permitted to offer like testimony of statements made prior to the time of the alleged fabrication, indicating the claim made by defendant to be incorrect.

It is to be noted also that the corroborating statements testified to by the witness for the state were made within three or four hours of the assault, and in this regard the rule is announced in Wharton on Evidence, sec. 570:

"Statements made by a witness corroborating his evidence upon the trial, such statements being uttered soon after the transaction in litigation, and at a time when the witness could not have been subjected to any disturbing influences, are competent when proof has been offered to impeach him, by showing that he had recently fabricated the narrative, or that he testified corruptly." (*Silva v. Pickard,* 10 Utah, 78, 37 Pac. 86, and authorities cited.)

3. It appears that while the defendant on trial and his co-defendants were incarcerated in the city jail, they wrote certain letters to several of their fellow-countrymen and sur-

reptitiously passed them through the bars of a jail window to a waiting Chinaman for delivery. This latter act was observed and the letters came into the possession of certain police officers prior to delivery. The original letters and an interpretation of them into English were admitted in evidence on behalf of the state, over the objection of defendant, and such ruling is urged as error.

Preliminary to the foregoing, a Chinaman by the name of Yee Wee testified on behalf of the state that he was familiar with both the English and Chinese languages; that he could read and write each; that he had seen the original Chinese letters in question, and from them had made the translations into English which were at that time produced by the witness; that his business was that of a translator and that at times he practiced medicine. Said translations indicated the originals were addressed to certain Chinese, directing them to appear as witnesses and indicating the line of testimony desired, the tendency of which would be to establish an alibi for the accused. Defendant urges that the "translation of the Chinese letters was not a proper translation and was not made by a person competent to make the same, as is evidenced by the translations themselves." The translations themselves would in no manner indicate that they were improper translations, neither would nor do they in any degree tend to throw light upon the competency or incompetency of the person making them. Defendant's objection seems to go more to the weight to be accorded this evidence. The record is absolutely silent on any testimony that would tend to doubt the competency of the witness or the correctness of the translations. It was defendant's privilege to have a translation made by some person more competent if he deemed the translations incorrect. In the absence of any showing to the contrary, the court was bound to accept as a basis for admitting the testimony the statement of the witness as to his competency as an interpreter and the correctness of his interpretations; the jury, however, were in no manner bound to accept either as true. If defendant considered the interpretations too liberal, and that the interpreter had because of such method

failed to make an interpretation correctly expressing in English the contents of the Chinese letters, he had his ready remedy by showing such fact under cross-examination or by a witness on behalf of defendant. His remedy, without question, was not by objecting to their admissibility.

The court takes judicial notice of the true signification of English words and phrases; not of Chinese, however. (Sec. 5950, Rev. Codes.)

4. In defining the words "reasonable doubt," as used in the instructions to the jury, the court used the following language:

"A reasonable doubt as used throughout these instructions is such a doubt as a reasonable and prudent man would be likely to act upon in determining the important affairs of life. A doubt produced by undue sensibility in the mind of a juror in view of the consequences of his verdict is not a reasonable doubt; and the jury is not allowed to create sources or materials of doubt by remote conjectures as to possible states of the case different from those established by the evidence. You are not at liberty to disbelieve as jurors if from the evidence you believe as men. The oath which you have each taken imposes upon you no obligation to doubt when no doubt would exist if no oath had been administered; and in considering this case the jury are not to go beyond the evidence to hunt up doubts, nor must they entertain such doubts as are merely chimerical or conjectural. A doubt to justify an acquittal must be reasonable and must arise from a candid and impartial consideration of all of the evidence in the case, and unless it is such that were the same kind of a doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it would be insufficient to authorize a verdict of not guilty. If after considering all the evidence you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt."

Defendant assigns as prejudicial error the use in said instruction of the following language: "You are not at liberty to disbelieve as jurors if from the evidence you believe as

men. The oath which you have taken imposes upon you no obligation to doubt when no doubt would exist if no oath had been administered.'' The employment of such language in this regard seems to have arisen from its sanction in an early Pennsylvania case. (*Commonwealth v. Harmon*, 4 Pa. 273.) In a later case from the same state (*Fife v. Commonwealth*, 29 Pa. 439), the court said in commenting upon an instruction similar to the language here objected to, as follows:

"It must be remembered that jurors are men, and that it is because they have human hearts and sympathies and judgments that, they are selected to determine upon the rights of their fellow-men. If they were more or less than men, they would not be the constitutional peers of the prisoner, and would be disqualified to decide his cause. The term 'jurors' means nothing more than twelve men qualified and sworn to try a cause according to the evidence. Their oaths as jurors rest on their consciences as men, and as men they are accountable to God and their country for their verdict. Nothing more is demanded of them as jurors than an honest exercise of their judgment as men. The evidence which produces conviction on their minds in one capacity works the same result in another. Their belief is the same in both.'' (*Nevling v. Commonwealth*, 98 Pa. 334.)

Language similar to that here under consideration was employed by the trial court in a like connection in the so-called anarchist cases in Illinois and sanctioned by the supreme court of that state. (*Spies v. People*, 122 Ill. 82, 3 Am. St. 320, 12 N. E. 865, 17 N. E. 898, 5 Am. Cr. Rep. 637, 6 Am. Cr. Rep. 570.)

The following cases indicate the further indorsement of such an instruction: *Davis v. State*, 51 Neb. 301, 70 N. W. 984; *State v. Potts*, 20 Nev. 389, 22 Pac. 754; *Perry et al. v. People*, 38 Colo. 23, 87 Pac. 796. Our attention has been called to but one state holding contrary to the above (*Siberry v. State*, 133 Ind. 677, 33 N. E. 685.) We, however, are of the opinion that both upon principle and authority the trial court should be sustained in this regard.

5. Appellant assigns certain other errors in relation to the instructions given by the court on his own motion and the refusal to give certain instructions requested by defendant. We have examined the record in these particulars and find no error therein.

6. The next error assigned by defendant is in relation to the action of the trial court in permitting the jury to view the premises where the assault was committed after the case had been submitted to the jury. The minutes of the trial court show that after the case had been submitted to the jury, they returned into open court and stated to the court that they desired to view the premises in which the assault is alleged to have been committed. Said minutes further show that, "The state's counsel consenting and the defendant's counsel stating they had no objections, the court ordered that the jury be conducted in a body, in the custody of the sheriff, to the building and premises of 622 Front street, and that after their inspection of.said premises they be returned into court without unnecessary delay. The jury after being specially admonished by the court, retired in company of the sheriff, who was first sworn to suffer no persons to speak or communicate to the jury, nor to do so himself on any subject connected with this trial, and to return them into court without unnecessary delay. The sheriff and jury were also accompanied by the defendant in the custody of an officer." It further appears by said minutes that after the view, the jury were conducted into open court, placed in charge of sworn bailiffs and retired to further deliberate upon their verdict. The record further discloses that the trial judge did not accompany the jury while on their view of the premises.

Sec. 7878, Rev. Codes, provides that:

"When, in the opinion of the court, it is proper that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted in a body, in the custody of the sheriff, to the place, which must be shown to them by a person appointed by the court for that purpose; and the sheriff must be sworn to suffer no person

to speak or communicate with the jury, nor to do so himself, on any subject connected with the trial, and to return them into court without unnecessary delay, or at a specified time."

It will be noticed that no precise time is fixed by the statute when the view of the premises shall be had by the jury, and such being the case, we are at a loss to comprehend how any constitutional or statutory right of the defendant was in any manner jeopardized, and especially in view of the fact that he offered no objection to the jury's viewing the premises after the case was submitted, but, on the contrary, consented that such order might be by the court made. This was at the best a mere matter of procedure, and such as the consent of the defendant would estop him from questioning its regularity. (*People v. Hawley,* 111 Cal. 78, 43 Pac. 404.)

Counsel for defendant urges that "The request for a view was made by the jury, and, the state having announced its consent to such view, it must inevitably have prejudiced the defendant with the jury had he under such circumstances objected to their request. His failure to object was practically extorted from him." With such position we can find no favor. When counsel in open court announce their acquiescence or consent to an order about to be made by the court, the court is authorized in believing counsel mean what they say and to rely upon such statement. If counsel for defendant had desired to contest or object to the court's making the order, he had an ample remedy to request the court to have the jury withdrawn during the consideration of the matter. To lend acquiescence to this position taken by counsel for defendant would tend to the embarrassment of trial courts in knowing just when counsel consider themselves under duress or the subjects of extortion. If the consent of the defendant had involved a constitutional guaranty, the conclusion might be different, based, however, upon the theory that the defendant was incapable of giving consent. Such, however, is not the situation here.

7. The next matter urged as error relates to the failure of the trial judge to accompany the jury. It appears that no request was made by defendant for the trial judge to accom-

pany the jury and no objection taken to his absence until the time of presenting motion for new trial. It is held in the case of *People v. White,* 5 Cal. App. 329, 90 Pac. 472, that the right of an accused in a criminal case to object to a view by the jury in the absence of the judge may be waived by him, and that "such error should be objected to at the time, and consent of defendant or his failure to object in time will defeat his right to complain." (*People v. Torm Poi,* 86 Cal. 225, 24 Pac. 998; *People v. Fitzgerald,* 137 Cal. 546, 70 Pac. 554.) As the view of the premises was had without the presence of the judge, by defendant's consent, that is, his failure to object, he cannot here be heard to complain. The matter complained of here is at most only an irregularity which should have been objected to at the time of its performance. As was said in *People v. White, supra:*

"No timely objection to the absence of the judge from the first view was made, such absence was not prejudicial to the defendant or subversive of his legal rights, and there is no ground for granting a new trial. (*Horne v. Rogers,* 110 Ga. 362, 35 S. E. 718, 49 L. R. A. 176.) It is not every unauthorized view of the *locus in quo* that will require the setting aside of a verdict. Considerations of practical justice forbid it. If verdicts were set aside for such reasons, there would be no reasonable limits to litigation, especially in cities where the opportunities are great for jurors personally to view the locality of a crime under consideration." (*State v. Mortensen,* 26 Utah, 312, 73 Pac. 562.)

We are cited to the case of *People v. Yut Ling,* 74 Cal. 569, 16 Pac. 489, as supporting defendant's contention that he is entitled to a new trial for the failure of the trial judge to accompany the jury upon a view of premises, and such is the doctrine of said case. The decision is seven sentences long, and no reasons are assigned for the holding. It is not shown whether the defendant requested the judge to go or made any objection to his absence, and two justices dissent. The same court later, in *People v. White, supra,* in their discussion of said case plainly indicate they view it as a case with limita-

tions and one the doctrine of which is not applicable to the facts involved in this inquiry.

In the case of *State v. Reed,* 3 Ida. 754, 35 Pac. 706, it appears that "Neither the defendant nor the court nor the judge of said court accompanied the jury or were present at any time during the view of said premises by said jury." And the absence of the defendant at the time of such view by the jury was assigned as error. And in such case this court held that:

"In the case under consideration the defendant took no exception to the manner in which the view was had. In view of the fact that there is nothing in the statute indicating that the presence of the defendant was intended or required, it was at least incumbent upon him to make any desire he had in that behalf manifest to the court; and by his failure to do so, we think he clearly waived any right, constitutional or otherwise, he might have to be present."

In *State v. McGinnis,* 12 Ida. 336, 85 Pac. 1089, where a view of the premises in a criminal case was had without the presence of the defendant, which proceeding was assigned as error, this court again said that it was not prepared, however, to say that the defendant may not waive such right and privilege of being present at the time of the view. While the court in the case last mentioned questioned some of the doctrine as announced in the case of *State v. Reed, supra,* it will be noticed, however, that the position taken by this court in the case of *State v. Reed* that a defendant may waive any right he may have to be present at the view was not disapproved in the latter case, and now stands as the announced law of this state. Therefore, if a defendant may waive his right to be present at a view of premises, he must by the same line of reasoning be privileged to waive his right—if he possesses such right—to have the trial court present at the view of the premises by the jury. While we think it advisable in all criminal cases for the trial judge to accompany the jury and the defendant upon a view of the premises, we think where the defendant failed to except to the absence of the judge or request the judge to accompany the jury, and where the view was had

by the consent of the defendant, and the record does not disclose that anything improper or that can be construed as prejudicial to the defendant took place at or during the view, no such error has been committed as would justify a reversal.

In considering this assignment of error, and it being a matter in relation to procedure, this court by sec. 8070, Rev. Codes, is admonished that, "After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

Also by sec. 8236, Rev. Codes, which provides that "Neither a departure from the form or mode prescribed by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right." Defendant does not claim that he was *actually* prejudiced by the absence of the trial judge at the view. If the trial judge had accompanied the jury, he could only have been a silent spectator, as the jury had been placed in charge of a sheriff who was sworn to suffer no person to speak or communicate with the jury, or to do so himself, on any subject connected with the trial and to return them into court without unnecessary delay. Defendant does not complain of any misconduct on the part of the jury or the officer in whose charge they were during the view, and such view was apparently conducted with all due regularity, and the absence of the trial judge had no tendency whatever to operate to defendant's prejudice. The most that defendant can claim is that it was a technical wrong, and he has not asserted or claimed that such absence was an actual or positive injury to his defense.

8. After the jury had been deliberating upon their verdict for some time, they were conducted into open court, and in answer to an inquiry by the court it appeared that they were unable to agree upon a verdict. Thereupon the court further instructed them in writing, which instruction is as follows:

"Gentlemen: It is your duty to decide this case if you can conscientiously do so; you should listen to the arguments of

each other with a disposition to be convinced; and if a large majority of your number are on one side or the other of this case, the minority should consider whether their doubts are reasonable or whether they may not reasonably be mistaken. It should be the object of all of you to arrive at a common conclusion, and to that end you should deliberate together with calmness. It is your duty to agree upon a verdict, if possible. If, however, any one of your number, after having consulted with his fellow-jurors, entertains a reasonable doubt of the defendant's guilt, then you cannot in such case find the defendant guilty.''

Defendant assigns the giving of such instruction as prejudicial error because of the use of the following language therein: ''And if a large majority of your number are on one side or the other of this case, the minority should consider whether their doubts are reasonable or whether they may not reasonably be mistaken.'' Defendant argues that the import of said language is that if the majority of the jury be one way, the doubt entertained by the minority may for this reason be unreasonable, and that it indicates to the jury that the court takes it for granted that a majority of the jury are for conviction, for how could a minority entertain doubts and be for conviction? That it in effect says, ''Those of you who entertain doubts of the defendant's guilt ought to consider whether those doubts are reasonable, or whether you may not reasonably be mistaken.'' It cannot be gainsaid that a technical analysis of the language used, standing alone, might bear such construction with which it is sought to be impressed by appellant and that its use can in no wise be commended. A reading of the entire instruction, however, plainly indicates that it was not the intention of the court to be so understood, and neither is it reasonable to' presume in the light of the entire instruction and those previously given by the court that any member or members of the jury could have so understood, nor have believed the court to have so indicated and thereby to have acquiesced in a verdict of guilty.

If any juror were astute enough to note the possibility of the meaning urged by counsel, the same sense of astuteness

would prevent his adopting such as the meaning of the court in view of the contrary indication in the same instruction and the many plain and unequivocal expressions otherwise contained in the instructions given at the close of the trial, and of which the jury were privileged to possess a copy in their jury-room, to assist them during their deliberations. (Sec. 7902, Rev. Codes.) The language under discussion is no wise to be commended, and should not be employed because of its capability of interpretation as hereinbefore set forth. We cannot say, however, that it seems reasonable to believe in view of all the record that because of the use of this language alone and the possible meaning to attach thereto, that some member or members of the jury voted for conviction where otherwise they would not have done so; or that solely because of the matter mentioned they should or would reasonably have voted for conviction. (See sec. 188, Hughes' Instructions to Juries.)

9. Defendant assigns forty-six specifications of error, the major portion of which are not argued in appellant's brief, nor were they argued orally. We have made a complete examination of the record and the errors specified, and find none that are prejudicial. An examination of the record also impels us to the conclusion that the verdict is not contrary to the evidence. The judgment is *affirmed.*

Sullivan, J., concurs.

Ailshie, J., dissents.