310 P.2d 388

STATE of Utah, Plaintiff and Respondent,

v.

Frederick Ray SIBERT, Defendant and Appellant.

No. 8564.

Supreme Court of Utah.

April 25, 1957.

Gordon I. Hyde, Salt Lake City, for appellant.

E. R. Callister, Jr., Atty. Gen., Gary L. Theurer, Asst. Atty. Gen., for respondent.

CROCKETT, Justice.

Frederick Ray Sibert appeals from conviction of robbery. The principal errors assigned relate to the admission of the testimony and penciled notes of the investigating officer.

The robbery was committed upon Lyle Thomas Butters at his service station in Salt Lake City on the evening of January 21, 1956. At the trial Butters related the details of the robbery and identified the defendant whom he had previously picked out in a "line-up" at the police station. Upon cross-examination he was confronted with a claimed inconsistency in his testimony that at the preliminary hearing he had said the robber's car was a green Pontiac of the early 1940 models, whereas his instant testimony was that it was a cream colored Pontiac, 1947 model. To bolster the testimony of Butters the State called as a witness Police Officer John J. Ferrin, who, over counsel's objection, was allowed to testify that Butters had told him immediately after the robbery that it was a cream colored Pontiac of the early 1940 models. However, Officer Ferrin was permitted to go further and detail the story of the robbery as he had received it from Butters, including the description of the robber, the license number of the car and the conversation between the robber and Butters. He was then handed a set of penciled notes which he identified as his own, made during his interview with Butters immediately after the crime, which notes were also admitted in evidence over objection.

In making their respective arguments as to the admissibility of this evidence, the parties are at odds as to whether it is hearsay: The defendant contending that it is; the State that it is not.

The term hearsay is applied to testimony offered to prove facts of which the witness has no personal knowledge, but which have been told to him by others.[1] He is thus not testifying from his own knowledge or observation, but is acting as a conduit to relay that of others. The general rule, to which there are admittedly many exceptions, is that such testimony is not admissible on the ground that it lacks trustworthiness for two basic reasons: (1) The person who purports to know the facts is not stating them under oath; (2) he is not present for cross-examination.[2] Oth-

---

1. Coureas v. Allstate Ins. Co., 198 Va. 77, 92 S.E.2d 378, 383; Cross v. Commonwealth, 195 Va. 62, 77 S.E.2d 447, 453.

2. 5 Wigmore on Evidence (1940) Sec. 1362.

er reasons assigned for its unreliability are the danger of inaccuracy in the witness relaying what he has been told, and the fact that the jury does not have the opportunity to see the person whose declarations are offered as evidence.[3] However, it is not every instance in which a witness relates what he heard someone else say that he is purporting to represent that the statement he heard is true. The purpose of his testimony may be simply to prove that someone else made a statement without regard to whether it be true or false. Testimony of this nature does not violate the hearsay rule since the witness is asserting under oath a fact he personally knows, that is, that the statement was made,[4] and he is subject to cross-examination concerning such fact.

It is the position of the State that the rehabilitating aspects of Officer Ferrin's testimony are of the type of testimony just mentioned. It is obvious that the purpose of his testimony concerning Butters' statement as to the color and model of the car was not given to prove the color or model of the car. Those facts were not in issue; it was not important what the color or model of the car the robber used was. Ferrin's statement that he heard Butters say on the prior occasion that the car was a cream colored Pontiac of the early 1940 models was given only to prove that he had in fact heard him make such a statement. This would serve only to demonstrate to the jury that Butters had on the earlier occasion made a statement consistent with his present testimony. If viewed strictly in that light, it would seem that the testimony would not be regarded as hearsay in the usual sense of that term.

On the other hand, it is argued, not without support in reason, that the testimony of Ferrin as to Butters' statements concerning the color and model of the car might be regarded by the jury as substantive proof of such matters, and if so regarded by them, Ferrin would in fact be acting as a conduit for Butters' knowledge and observations concerning those facts. Ergo, looked upon in that light, the testimony would properly be regarded as hearsay. As we view it, this divergence between the parties as to the exact nature of this testimony is not necessary to a decision of the real issue. The matter of critical moment is whether the evidence was competent and admissible.

There is some conflict in the decisions in the various states as to the admissibility of such statements. Those courts rejecting such evidence state as a basis for doing so that:

"* * * once the impeaching damage is done, it cannot be undone, irrespective of the volume and weight of

3. McCormick, Evidence § 224 (1954).

4. 6 Wigmore on Evidence (1940) Sec. 1770. See also Hawkins v. Perry, Utah, 253 P.2d 372.

the rehabilitating evidence, because the fact remains that the witness was inconsistent as to one matter and the inference remains that, once inconsistent, the witness may be inconsistent with respect to any or all matters encompassed by his testimony. To save trial time and to reduce possibilities of confusing juries, prior out-of-court statements consistent with oral testimony are held inadmissible." [5]

■ The foregoing consideration does not appeal to us as controlling. We think the better view is that where there has been an attempt to impeach or discredit a witness, prior statements consistent with his present testimony may be offered to offset the impeachment.[6] Such procedure has previously been approved by this court. In State v. Mares, the doctor who performed the autopsy on the deceased had made a statement allegedly inconsistent with his statements at the trial concerning his theory of the direction a bullet entered the deceased's skull. To rehabilitate his testimony portions of the original autopsy report were allowed to be read in court, cor-

rectly limited to that part of the report which supported the questioned testimony.[7] We believe the admission of this testimony was based on sound principles. The function of evidence is to assist the jury in arriving at the truth, and if it has any logical tendency to destroy or support the veracity of the witness, it is relevant to be considered as bearing upon his credibility.[8] When evidence of inconsistent statements has been introduced, or insinuations made by cross-examination that such inconsistent statements were uttered, it comports with reason and experience to admit prior consistent statements to rebut any inference that the witness was telling a recently fabricated story[9] or was relating tailor-made evidence given him by someone else, such as the police who might be overzealous in trying to obtain a conviction.

■ Insofar as Officer Ferrin's testimony actually supported the parts of Butters' testimony upon which impeachment was attempted, that is, as to the color and model of the robber's car, his evidence was properly admitted as rehabilitating testimony.[10] In the instant case, however, the

5. State v. Murley, Wash., 212 P.2d 801, 803. See also 4 Wigmore on Evidence (1940) Sec. 1126.
6. State v. Mares, 113 Utah 225, 192 P.2d 861; see also State v. Fouts, 1950, 169 Kan. 686, 221 P.2d 841; Peterson v. Richards, 73 Utah 59, 272 P. 229; State v. Seyboldt, 65 Utah 204, 236 P. 225.
7. Boykin v. United States, 5 Cir., 11 F.2d 484; Tyrrel v. State, 177 Ind. 14, 97 N.E.

14; Hicks v. State, 165 Ind. 440, 75 N.E. 641.
8. 4 Wigmore on Evidence (1940) Sec. 1126. See also 140 A.L.R. 21 (1942).
9. See State v. Moon, 20 Idaho 202, 117 P. 757.
10. This type of rehabilitating evidence is also permitted by the proposed Utah Rules of Evidence, Rule 20. See also proposed Rule 63(1) (c). We are not

officer was permitted to go beyond the character of evidence just discussed and to give the other details of Butters' story of the crime. In doing so, Ferrin was in fact serving as a conduit to relay Butters' knowledge to the jury. Thus, such testimony was hearsay in the true sense of that term, and therefore was improperly admitted.

Closely related to the conclusion just stated is the problem arising from the admission of Officer Ferrin's notes. These notes were not used for the purpose of refreshing the officer's recollection; nor do the notes, as they were used by the witness, come within the contention of the State that, " * * * by verifying and adopting the record of past recollection the witness makes it useable testimonially,[11] * * *." These notes were handed to the officer for identification after he had testified concerning his investigation and his conversation with Butters. Therefore, the only purpose they could serve was to corroborate his testimony. It is well settled that when a witness can and does testify to the facts without resort to his memorandum, it cannot be used to bolster his testimony.[12] The admission of the notes was also error.

The State maintains that even if the court committed error in receiving the officer's evidence, the defendant's guilt was so plainly manifest that to receive it did not result in prejudice in the cause. With deference to our statute which does not allow us to presume prejudice from mere error,[13] we do not believe that it can fairly be stated with assurance that the errors were harmless. In attempting to prove the guilt of the accused beyond a reasonable doubt, it must be assumed that all of the State's evidence was presented for that purpose. The jury may well have regarded the officer's evidence as more persuasive than that of Mr. Butters. From the record it appears that he was more confident and self-assured, and was able to be more definite as to the detail of the crime than the complaining witness himself. It is a delicate task for a reviewing court to attempt to appraise what weight particular evidence may have had with the jury. It would be going a long way indeed for us to entirely discount the possibility that it had some effect upon their deliberations. It is the exclusive prerogative of the jury to judge the weight of the evidence and the facts to be found therefrom. It is of grave importance, par-

unaware that this court in two instances has denied the admission of rehabilitating statements, but in both cases the statements were made by a party to a civil action and excluded as being self-serving. Ewing v. Keith, 16 Utah 312, 52 P. 4; Silva v. Packard, 10 Utah 78, 37 P. 86.

See also Peterson v. Richards, 73 Utah 59, 272 P. 229, 236.
11. 3 Wigmore on Evidence (1940) Sec. 754, p. 97.
12. People v. Allen, 37 Cal.App. 180, 174 P. 374.
13. Sec. 77–42–1, U.C.A.1953.

ticularly in criminal trials, that such prerogative be left to them and that the proceedings be conducted in such manner as to assure every safeguard to the rights of defendants. We conclude that the admission of this evidence is not the type of error which could properly be regarded as a mere irregularity or of such inconsequential nature that it could not have been prejudicial.

■ A further matter of which the defendant complains is that the trial judge refused to grant him probation solely on the ground that he would not admit his guilt of the crime. In view of the necessity for reversal of the conviction and remand for a new trial, the question might seem to be moot. However, it is our responsibility to pass on matters which may be pertinent in the event of a retrial,[14] and we make these observations apropos this question.

■ Probation is not a matter of right, and this is so no matter how unsullied a reputation one convicted of crime may be able to demonstrate to the trial judge. The granting or withholding of probation involves considering intangibles of character, personality and attitude, of which the cold record gives little inkling. These matters, which are to be considered in connection with the prior record of the accused, are of such nature that the problem of probation must of necessity rest within the discretion of the judge who hears the case. This is not to say that if it were clearly shown that the trial judge would have granted probation except for some wholly irrelevant, improper or inconsequential consideration, such refusal might be so capricious and arbitrary as to warrant the conclusion that he did not in fact exercise his discretion and justify a review of his action. Suffice it to say that such does not appear to be the fact here.

■ It is true that in discussing the request for probation the trial judge pointed out to the defendant the obstacle presented by the fact that, " * * * you deny your guilt in this matter, and, of course, we do not put defendants on probation as a rule, where they do that, because there is no reformation to be made. They are not guilty in their own minds, so there is nothing that the probation department can do for them." It is contended that the effect of such reasoning is to force the defendant to either testify against himself, or have probation denied, which would violate the constitutional protections against self-incrimination.[15] He has no refuge in such provisions after he has been convicted of

14. State v. Hutchinson, 4 Utah 2d 404, 295 P.2d 345, 347. Cf. Rule 76(a), U.R.C.P.

15. United States Constitution, Amend. V; Utah Constitution, Art. I, Sec. 12.

the crime in question. However, it is realized that if this were the sole reason for the denial of probation, under some circumsances a grave injustice may be wrought upon an accused who might otherwise be of exemplary character, and it is not inconceivable, may have been wrongly convicted. But a fuller examination of the colloquy between the court and the defendant as shown by the record leaves room for the conclusion that this was not the sole reason, but was only one of the reasons for denying probation. The judge also stated: " * * * your record is not favorable and your attitude is not favorable to probation and for that reason you are committed forthwith."

A new trial is ordered.

McDONOUGH, C. J., and WADE and HENRIOD, JJ., concur.

WORTHEN, Justice (concurring and dissenting).

I concur with the result reached by the majority opinion and agree that the case must be reversed. I am of the opinion, however, that it was error for the trial court to admit any testimony of Officer John J. Ferrin intended to rehabilitate the testimony of Butters. I entertain the view that it violates the hearsay evidence rule and does not fall within any recognized exceptions, nor do I wish to be understood as subscribing to the statement that the testimony of Officer Ferrin was admissible for any purpose. I believe the witness should be limited to explaining that he was mistaken at the time he testified at the preliminary hearing, and that he had further considered and reflected on the matter and had concluded that he was in error when he testified at the hearing. If the jury or the trier of the facts are persuaded by his integrity and straightforwardness, he will probably be able to show to the satisfaction of the court and jury that the facts were as testified to by him on the stand in the instant hearing.

Of course, the testimony of Officer Ferrin leaves the waters as muddy as they were before he entered. The opinion of the court observes:

" * * * Upon cross-examination he was confronted with a claimed inconsistency in his testimony that at the preliminary hearing he had said the robber's car was a green Pontiac of the early 1940 models, whereas his instant testimony was that it was a cream colored Pontiac, 1947 model. To bolster the testimony of Butters the State called as a witness Police Officer John J. Ferrin, who, over counsel's objection,

was allowed to testify that Butters had told him immediately after the robbery that it was a cream colored Pontiac of the early 1940 models."

It is a blind spot freak that justifies the admission of such hearsay evidence on the ground that Officer Ferrin was testifying to a fact—the fact that Butters told Officer Ferrin something. The prosecutor is not interested in any statement made by Butters except the statement by Ferrin which will rehabilitate Butters.

To open the door and to permit A, B, C and X, Y, Z to tell what Butters told them would unfairly extend the trial and would compel the party against whom the evidence was offered to lose one of his best weapons—a weak, discredited witness—a witness discredited by himself.

I can see some better reason for permitting C to bolster the testimony of B by attacking the testimony given against B by Witness A.

But to just let the uncontrolled witnesses with no basis for cross-examination run wild usually leads, as here, to further confusion—and next the prosecuting attorney will want to prove that Officer Ferrin didn't describe the car as a cream colored 1940 model and so on ad infinitum.