2006 UT App 322

**STATE of Utah, Plaintiff and Appellee,**

v.

**Phillip Jim BUJAN Jr., Defendant and Appellant.**

**No. 20050206–CA.**

Court of Appeals of Utah.

Aug. 3, 2006.

---

Ralph Dellapiana and Linda M. Jones, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Kris C. Leonard, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges GREENWOOD, DAVIS, and THORNE.

## OPINION

GREENWOOD, Associate Presiding Judge:

¶1 Defendant Phillip Jim Bujan Jr. appeals his conviction for rape of a child, *see* Utah Code Ann. § 76–5–402.1 (2003), and aggravated sexual abuse of a child, *see id.* § 76–5–404.1 (2003), both first degree felonies. On appeal, Defendant argues that the trial court abused its discretion by allowing testimony in violation of hearsay rules. We reverse and remand.

## BACKGROUND

¶2 Tina Binkerd and Defendant divorced in 1997, after three years of marriage. Their divorce was prompted, in part, by Binkerd's discovery that Defendant was having an affair with her best friend.

¶ 3 At the time of the divorce, Binkerd and Defendant had two daughters: K.B., who was born in 1989, and A.B. Binkerd also had a son, J.B., from a previous relationship.

¶ 4 For several years after Defendant and Binkerd divorced, Defendant had little interaction with Binkerd or his daughters. However, in 2001, he called and sought to renew his involvement in K.B. and A.B.'s lives. Binkerd and the girls subsequently began going to the park with Defendant and "building a relationship again." Eventually, Binkerd began allowing Defendant to tend the children while she and her boyfriend went on overnight trips to Wendover.

¶ 5 On the evening in question, in October or November of 2001, Binkerd was on a Wendover trip. J.B. had gone to stay with friends and A.B. was visiting an aunt. K.B. stated that she was sitting on her bed in her basement bedroom when Defendant came downstairs into her room and kissed her. K.B. "didn't think anything of it" at first "because he's my dad." However, K.B. further testified that Defendant proceeded to hold her arms down, tried to touch her breasts, and put his hand down her pants. He then unzipped his pants and removed her pants and pulled her underwear to her feet. She stated that he put his penis inside her vagina for five or ten minutes, that the penetration "hurt very much," and that afterward Defendant told her she "better not tell anybody." K.B. stated that she was afraid to tell her mother about the incident because she feared Defendant would come after her and because she thought the incident was her fault.

¶ 6 K.B. testified that after the rape she hated Defendant and was never alone with him again. Her grades in school dropped, and she tried to commit suicide. In 2002, in response to K.B.'s increasing hostility and aggression toward family members, Binkerd put K.B. in counseling. In March 2003, after a counseling session, K.B. told her mother that Defendant had raped her. Thereafter, she also told others about the rape, including her counselor and Detective Daphne Oberg of the Salt Lake County Sheriff's Office.

¶ 7 Soon after revealing the alleged rape to her mother, K.B. was examined by Dr. Lori Frasier and nurse practitioner Linda Lewis at Primary Children's Medical Center. At trial, Frasier testified that their examination was "unremarkable" and neither supported nor disproved that K.B. had been the victim of sexual abuse. Specifically, Frasier testified that K.B.'s examination revealed no areas of discontinuity or disruptions in K.B.'s hymen. Frasier clarified, however, that research in the field of child sexual abuse indicated that injuries to the hymen "have the potential to heal very rapidly, completely, and often without any evidence of scarring."

¶ 8 At trial, Binkerd testified about a particular incident that occurred sometime prior to Christmas in 2001, when she and her boyfriend were returning from a trip to Wendover. Upon arriving at her house, Binkerd heard K.B. screaming inside. Binkerd ran to K.B.'s room, where she discovered K.B. lying on her bed with Defendant on top of her "holding her by the arms and holding her legs down with his leg." Both were fully clothed. Binkerd testified that she started screaming and asked Defendant what was going on, whereupon he replied that K.B. "was out of control and she's a spoiled brat." Binkerd also stated that K.B. was crying, screaming, and nearly hyperventilating. Prior to that incident, Binkerd described K.B.'s attitude toward Defendant as "very close." After that incident, however, Binkerd testified that K.B.'s attitude toward Defendant "almost changed completely" and she wanted "nothing to do with him."

¶ 9 On cross-examination, Binkerd stated that in late 2001, Defendant announced to the family that after an apparent period of separation, he planned to return to his girlfriend, whom Binkerd blamed for their divorce. Binkerd testified that she and her daughters were angry about Defendant's decision. Soon thereafter, Defendant ended his renewed involvement with K.B. and A.B.

¶ 10 At trial, Defendant's counsel identified several alleged discrepancies between K.B.'s trial testimony and her statements in the pre-trial interview with Detective Oberg. Trial counsel noted that K.B. testified that the alleged rape occurred in 2001, but she had earlier told Detective Oberg it might

have been in 2000. Trial counsel also noted that K.B. had told Detective Oberg she wasn't sure in which room the incident occurred. Finally, trial counsel identified an alleged discrepancy concerning Defendant's actions and K.B.'s response when Defendant allegedly reached down her pants.

¶ 11 As its final witness, the State called Detective Oberg to testify. Trial counsel raised two objections to the admission of K.B.'s out-of-court statements to Detective Oberg. Counsel first objected when the State announced it planned to call Detective Oberg to testify. At this point, counsel stated that Detective Oberg's testimony would constitute "hearsay to the extent she's putting on a prior inconsistent statement," whereupon the State indicated that Detective Oberg would testify to prior consistent statements.

¶ 12 Defense counsel's second objection came when the State asked Detective Oberg about her interview with K.B. Counsel objected on the ground that Detective Oberg's testimony "would be duplicative to the extent she is going to restate [K.B.'s] statements to her" and again asserted that "[this] would be hearsay." The court stated that the question "didn't necessarily involve a hearsay issue," but agreed that the hearsay rule would apply. The State then elaborated that it would be arguing "under [r]ule 801 [that] this is a prior consistent statement," that would be used to refute defense counsel's attempts to "discredit what [K.B.] has said." At this point, the trial court stated, "Okay. Go forward." Detective Oberg then provided details of the 2001 rape as K.B. had recounted them to her.

¶ 13 A jury subsequently found Defendant guilty as charged. Defendant appeals.

## ISSUES AND STANDARDS OF REVIEW

█ ¶ 14 On appeal, Defendant raises two related issues. He first argues that the trial court abused its discretion by admitting hearsay testimony under rule 801(d)(1)(B) of the Utah Rules of Evidence. "The question of whether evidence is admissible can be either a question of discretion, which we review for abuse of discretion, or a question

of law, which we review for correctness." *State v. Martin*, 2002 UT 34, ¶ 29, 44 P.3d 805. In this instance, because we address the meaning of a rule of evidence, there is a question of law and we assess the trial court's ruling for correctness.

█ ¶ 15 Defendant also argues that he was prejudiced by the admission of the testimony and that we must reverse the trial court. "If, in the absence of the evidentiary errors, there is a reasonable likelihood of a more favorable outcome for defendant, we must reverse the conviction." *State v. Rimmasch*, 775 P.2d 388, 407 (Utah 1989).

## ANALYSIS

### I. Preservation

¶ 16 Before reaching the merits of Defendant's arguments, we first review the State's claim that we need not consider Defendant's rule 801(d)(1)(B) argument. The State argues that because Defendant failed to preserve the issue below and does not argue plain error or exceptional circumstances on appeal, he has waived the issue.

█ ¶ 17 "A general rule of appellate review in criminal cases in Utah is that a contemporaneous objection or some form of *specific* preservation of claims of error must be made a part of the trial court record before an appellate court will review such claim on appeal." *State v. Johnson*, 774 P.2d 1141, 1144 (Utah 1989) (quotations and citation omitted). Moreover, "the grounds for the objection must be distinctly and specifically stated." *Id.*

¶ 18 "The preservation rule serves two important policies." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. The first is to provide the trial court " 'an opportunity to address a claimed error and, if appropriate, correct it.' " *Id.* (quoting *State v. Eldredge*, 773 P.2d 29, 36 (Utah 1989)). The second is to bar a defendant from failing to make an objection "with the strategy of 'enhanc[ing] the defendant's chances of acquittal and then, if that strategy fails, ... claim[ing] on appeal that the Court should reverse.' " *Id.* (alterations and omission in original) (quoting *State v. Bullock*, 791 P.2d 155, 159 (Utah 1989)).

¶ 19 In the present case, trial counsel raised two objections to the admission of K.B.'s out-of-court testimony. Counsel first objected when the State called Detective Oberg to testify because her testimony would constitute "hearsay to the extent she's putting on a prior inconsistent statement." The State replied that Oberg would testify to prior consistent statements.

¶ 20 Counsel objected again after Oberg took the stand and the State asked her about her interview with K.B. In its second objection, counsel stated that Oberg's testimony "would be duplicative to the extent she is going to restate [K.B.'s] statements," and again asserted that such statements would constitute hearsay. In response, the State urged that Detective Oberg's testimony would be admissible as a prior consistent statement to refute defense counsel's attempts to "discredit what [K.B.] has said."

¶ 21 We conclude that counsel's objections, in conjunction with the court's reliance on rule 801, were sufficient to preserve the issue for appeal. We reach this outcome because the concerns giving rise to the preservation requirement set forth in *Holgate* are not applicable here. *See id.* First, although we agree that the grounds for Defendant's objection at trial could perhaps have been clearer, *see Nielsen v. Pioneer Valley Hosp.,* 830 P.2d 270, 272 (Utah 1992) (stating that although "[defendant's] objections were not textbook examples of specificity," they nonetheless "adequately directed the trial judge's attention to the claimed error" such that "they were sufficient"), the trial court clearly understood that counsel's objection pertained to rule 801 when it allowed Oberg to testify with regard to K.B.'s out-of-court statements under that rule.

¶ 22 Second, as Defendant notes, the other policy reason for requiring a party to pre-serve an issue for appeal is not a consideration here. Trial counsel did not "forego making an objection," *Holgate,* 2000 UT 74 at ¶ 11, 10 P.3d 346; rather, counsel twice stated his objection to allowing Oberg to testify concerning K.B.'s prior consistent statements. Therefore, Defendant satisfies both of the policies articulated in *Holgate.*[1]

¶ 23 Accordingly, because Defendant's objection was "sufficiently precise to alert the trial court to [the] claimed error[ ] and [ ] g[a]ve the judge an opportunity to make any corrections deemed necessary," *Nielsen,* 830 P.2d at 271, we conclude that Defendant sufficiently preserved his claim for appeal under rule 801(d)(1)(B). Therefore, we now review the merits of his argument.

## II. Rule 801(d)(1)(B)

¶ 24 Defendant maintains that the trial court abused its discretion when it admitted Detective Oberg's testimony concerning K.B.'s out-of-court statements under rule 801. Defendant argues that rule 801(d)(1)(B) is not applicable in the instant case because the rule is limited to circumstances in which the declarant made a consistent statement prior to the events giving rise to the motive to fabricate. Rule 801 states, in relevant part:

(d) *Statements which are not hearsay.* A statement is not hearsay if:

(d)(1) *Prior Statement by witness.* The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive ....

Utah R. Evid. 801(d).

¶ 25 In particular, Defendant claims that K.B. had reason to fabricate allegations

---

1. Moreover, the two principal cases relied on by the State to buttress its argument that Defendant failed to preserve his claim are facially distinguishable from the instant case. In *State v. Mead,* 2001 UT 58, 27 P.3d 1115, the supreme court declined to consider a defendant's challenge to medical testimony under Utah Rule of Evidence 703 because defendant failed to raise the issue in the trial court, did not argue "plain error or exceptional circumstances," and failed to provide any supporting authority or caselaw on appeal. *Id.* at ¶ 35 n. 5. Likewise, in *State v. Jennings,* 875 P.2d 566 (Utah Ct.App.1994), we refused to consider a defendant's arguments when he provided "absolutely no legal analysis or authority" for his claims. *Id.* at 569 n. 3. As we explain in the body of this opinion, Defendant sufficiently preserved his objection for appeal. Moreover, in his appellate brief, he adequately briefed the rule 801 issue. Hence, we find the State's argument on this issue unpersuasive.

against him in response to his disciplining her and in retaliation for him abandoning the family in 2001. Consequently, Defendant urges that Detective Oberg's testimony was inadmissible hearsay because it "did not serve to rehabilitate any charge of 'recent fabrication' under the rule." Defendant further explains that "[i]n order for the prior out-of-court statement to be admissible, the proponent must establish that it was made at a time *predating* the motive."

¶ 26 We begin our analysis by noting that Defendant correctly states that rule 801(d)(1)(B) as applied under the Federal Rules of Evidence does not allow postmotive statements to be admitted for a rehabilitative purpose. *See* Fed.R.Evid. 801(d)(1)(B); *Tome v. United States,* 513 U.S. 150, 156, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) (concluding that under the federal rules, " '[t]he applicable principle is that the prior consistent statement has no relevancy to refute the charge unless the consistent statement was made before the source of the bias, interest, influence or incapacity originated.' " (quoting E. Cleary, *McCormick on Evidence* § 49, ¶ 105 (2d ed.1972))). The State also correctly notes that rule 801(d)(1)(B) of the Federal Rules of Evidence is not binding authority on state courts. *See State v. Wanosik,* 2003 UT 46, ¶ 23, 79 P.3d 937 (stating that Utah courts are not required to follow application of federal rules or federal caselaw). However, federal rule 801 arose out of common law principles. *See Tome,* 513 U.S. at 156, 115 S.Ct. 696; *Holmes v. State,* 350 Md. 412, 712 A.2d 554, 558 (1998) (stating that the relevant state rule "embodies the common-law, premotive rule" and giving the state rule "the same interpretation the Supreme Court gave the federal rule in *Tome* "); *438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 64, 99 P.3d 801 (explaining that in a case of first impression involving the Utah Rules of Civil Proce-

dure, "we may look to decisions under the federal rules for guidance."). Therefore, we conclude that the premotive rule embodied in common law and enunciated in *Tome* is equally applicable in the instant case.

¶ 27 Indeed, our research indicates that state courts in many jurisdictions, both pre- and post-*Tome,* have adopted an approach similar to *Tome* by holding that "[r]ule 801(d)(1)(B) embodies the temporal requirement." *Tome,* 513 U.S. at 156, 115 S.Ct. 696. *See, e.g., State v. Martin,* 135 Ariz. 552, 663 P.2d 236, 238 (1983) (stating that under Arizona's rule 801(d)(1)(B), "[t]he only way to be certain that a prior consistent statement in fact controverts a charge of 'recent fabrication or improper influence or motive' is to require that the statement be made at a time when the possibility that the statement was made for the express purpose of corroborating or bolstering other testimony is minimized."); *accord State v. Fulton,* 333 S.C. 359, 509 S.E.2d 819, 826 (App.1998); *see also State v. Page,* 193 Ill.App.3d 467, 140 Ill.Dec. 612, 550 N.E.2d 248, 250 (1990) (holding that a prior consistent statement is admissible after the witness's testimony has been attacked, "but only if it was made before the motive to fabricate arose"); *State v. Lunstad,* 259 Mont. 512, 857 P.2d 723, 726 (1993) (holding that a witness's statements were not admissible under state rule 801(d)(1)(B) "because such statements were not made prior to the time [the witness's] alleged motive to fabricate arose.").[2]

¶ 28 The State contends, and our research confirms, that there is no Utah caselaw directly on point concerning the admissibility of pre- and postmotive statements. The State further argues that the two most relevant Utah cases, *State v. Asay,* 631 P.2d 861 (Utah 1981), and *State v. Sibert,* 6 Utah 2d 198, 310 P.2d 388 (1957), were decided prior

---

**2.** Although not dispositive in the instant case, we note that appellate courts are split on the issue of whether postmotive statements are admissible to *rebut* a charge of improper motive. *See, e.g., Moreland v. State,* 701 N.E.2d 288, 292–93 (Ind. Ct.App.1998) (distinguishing between prior consistent statements admitted for the truth of the matter asserted and those offered only for rehabilitative purposes, and determining that postmotive statements are admissible for rehabilitation);

*State v. Fulton,* 333 S.C. 359, 509 S.E.2d 819, 826 (App.1998)(noting that "[t]here is ... a split of authority among the appellate courts on this issue"); *Makinen v. State,* 737 P.2d 345, 349 (Wyo.1987) (interpreting Wyoming state rule 801 to allow the admission of a prior consistent statement "because of the inherent difficulty in determining when an improper motive or influence appears.").

to the existence of the predating requirement embodied in rule 801(d)(1)(B) and, as a result, our appellate courts have not yet addressed whether a postmotive statement is admissible for rehabilitative purposes. Therefore, the State urges that we narrowly construe *Tome*, so as to allow the challenged testimony. However, we believe that allowing postmotive consistent statements could easily lead to abuses—a witness could bolster his or her testimony by repeating the same version of facts to any number of persons who could then testify to those out-of-court statements. *See Tome*, 513 U.S. at 157–58, 115 S.Ct. 696 (stating rule addresses rebuttal of an alleged fabrication, "not bolstering the veracity of the story told"). This would undermine the purposes of hearsay exclusions. We are persuaded that the *Tome* approach is the better view and therefore adopt the premotive requirement that appears to be the prevailing position among state jurisdictions as well as the requirement under the federal rules of evidence.

¶ 29 With regard to the instant case, Defendant contends that K.B. had reason to fabricate allegations of abuse and sexual assault against him for two reasons: First, Defendant argues that K.B. was angry at him for punishing her for misbehaving, an incident that took place in 2001. Second, Defendant contends that K.B. was angry at him for leaving the family and returning to his girlfriend at the end of 2001. Consequently, Defendant argues that K.B.'s out-of-court statements to Detective Oberg do not serve a rehabilitative purpose under rule 801(d)(1)(B) because they were made in 2003, approximately two years after K.B. had reason to fabricate allegations against Defendant. We conclude that under the reasoning of *Tome* and similar state cases requiring the existence of a premotive statement, the trial court erred in admitting Detective Oberg's hearsay testimony concerning K.B.'s out-of-court statements to her. Consequently, the State's contention that Detective Oberg's hearsay testimony was admissible under rule 801(d)(1)(B) fails.

## II. Prejudicial Error

¶ 30 Finally, Defendant argues that the trial court's error in allowing Detective Oberg's hearsay testimony was prejudicial and therefore requires reversal. "We will not reverse [the] trial court for committing harmless error." *State v. Vargas*, 2001 UT 5, ¶ 48, 20 P.3d 271 (alteration in original) (quotations and citation omitted). Rather, "[Defendant] must show that the court's ruling led to a likelihood of prejudice." *Id.* (quotations and citation omitted).

¶ 31 In this case, we agree with Defendant that the admission of Detective Oberg's hearsay testimony led to a reasonable likelihood of prejudice. *See Sibert*, 310 P.2d at 392 (stating that "[i]t would be going a long way indeed for us to entirely discount the possibility that [a police officer's inadmissible hearsay testimony] had some effect upon [the jury's] deliberations.").

¶ 32 There was no physical evidence of K.B.'s sexual assault, and no testimony directly supporting K.B.'s account of the night in question. Therefore, Detective Oberg's testimony provided the only corroboration of K.B.'s alleged rape. As such, we cannot say that Detective Oberg's testimony constituted harmless error. *See State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) (defining a "harmless error" as an error that is "sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings." (quotations and citations omitted)). Rather, in this instance, we conclude that there was a likelihood of prejudice because "the likelihood of a different outcome [is] sufficiently high to undermine confidence in the verdict." *Id.* (quotations and citation omitted).

¶ 33 Accordingly, we reverse and remand for further proceedings consistent with this opinion.

¶ 34 I CONCUR: JAMES Z. DAVIS, Judge.

THORNE, Judge (dissenting):

¶ 35 I respectfully dissent from the majority opinion, as I do not believe that Defendant preserved his rule 801(d)(1)(B) claim for appeal. *See* Utah R. Evid. 801(d)(1)(B). Defendant's objections failed to satisfy the first prong of the preservation rule, that the trial

court be given " 'an opportunity to address a claimed error and, if appropriate, correct it.' " *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (quoting *State v. Eldredge*, 773 P.2d 29, 36 (Utah 1989)). Accordingly, I would decline to address Defendant's rule 801(d)(1)(B) argument and would affirm the judgment below.

¶ 36 Defendant twice objected to Detective Oberg's testimony about the K.B. interview on rule 801(d)(1)(B) grounds. The first objection came before Oberg took the witness stand. The second came during Oberg's testimony, but before she was asked to relay any particular out-of-court statement by K.B.[1] Both objections sought to exclude Oberg's testimony about the K.B. interview in its entirety.

¶ 37 The trial court properly overruled these categorical objections to Oberg's testimony about the interview, *even under the premotive rule* adopted by today's majority opinion. During cross-examination, Defendant attacked K.B.'s direct-examination testimony about being afraid to report Defendant's actions, stating, "I haven't seen anywhere you've said that before." The clear implication of Defendant's comment was that K.B.'s alleged fear of Defendant was something she had just made up on the witness stand, i.e., that it was a recent fabrication. Defendant also raised other alleged inconsistencies in K.B.'s testimony that may also have been subject to rebuttal under rule 801(d)(1)(B).

¶ 38 Any statement made by K.B. to Oberg in the 2003 interview that was consistent with the idea that K.B. was afraid to report Defendant would have been admissible under rule 801(d)(1)(B) to rebut Defendant's charge that she had fabricated this fear on the witness stand. The other alleged inconsistencies would also have implicated rule 801(d)(1)(B). Thus, at the time of Defendant's objections, the trial court was aware that Oberg might have *some* non-hearsay testimony to offer about K.B.'s prior statements, and properly overruled Defendant's categorical objections to her testimony.

¶ 39 In hindsight, much of Oberg's testimony may not have been admissible, at least not as non-hearsay under rule 801(d)(1)(B). However, at the time of Defendant's objections, the trial court had no way of knowing that Oberg's testimony would stray beyond the issue of K.B.'s fear of Defendant or other topics that might properly fall within rule 801(d)(1)(B). Accordingly, the trial court correctly overruled Defendant's objections at the time they were made and properly allowed the State to elicit testimony about K.B.'s out-of-court statements, subject to Defendant's continuing ability to object to any particular statements that did not fall within rule 801(d)(1)(B). Such specific and timely objections never materialized.

¶ 40 Defendant's initial objections did not shift the burden to the trial court judge to weigh each subsequent question to Oberg against her memory of K.B.'s testimony for purposes of applying rule 801.[2] Rather, the burden of objecting to individual hearsay statements remained with Defendant, who failed to raise the rule 801(d)(1)(B) issue again. Defendant's failure to further object left the trial court to speculate that Defendant was allowing hearsay testimony to come in as a matter of trial strategy, that the testimony fell within an applicable exclusion or exception, or that there was some other reason for Defendant's failure to object. In any event, the trial court was under no obligation to conduct an ongoing and unrequest-

---

1. The State's question to Oberg that prompted Defendant's second rule 801(d)(1)(B) objection was, "Let's talk about that interview with [K.B.]. What did you talk to [K.B.] about in the beginning?"

2. Nearly all of the jurisdictions that follow the premotive rule require predicate showings for admissibility in the same manner as other evidentiary questions. *See* Frank W. Bullock Jr. & Steven Gardner, *Prior Consistent Statements and the Premotive Rule*, 24 Fla. St. U.L.Rev. 509, 515 (1997). In these jurisdictions, the trial judge

determine[s] whether a prior consistent statement was premotive or postmotive based on evidence presented to the jury up to the time the statement's admission was sought, evidence presented to the judge out of the jury's presence, or a combination of these two means. The judge's determination of this question would normally dictate the admissibility of the statement.

*Id.* For this to occur, however, the trial court must be informed of the need to make this determination by a properly focused objection.

ed rule 801(d)(1)(B) evaluation of Oberg's testimony.

¶ 41 In conclusion, Defendant did not bring any specific rule 801(d)(1)(B) error to the trial court's attention, and thus did not preserve the issue for appeal. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. The trial court properly overruled the generalized objections that Defendant did raise, and Defendant failed to specifically object when Oberg actually provided testimony that was arguably hearsay. Under these circumstances, I would affirm the judgment of the trial court.