2008 UT 47

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Phillip Jim BUJAN, Jr., Defendant and Respondent.**

**No. 20060883.**

Supreme Court of Utah.

July 18, 2008.

Mark L. Shurtleff, Att'y Gen., Kris C. Leonard, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Linda M. Jones, Ralph W. Dellapiana, Salt Lake City, for defendant.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 We accepted this case to determine whether the court of appeals correctly construed the scope of rule 801(d)(1)(B) of the Utah Rules of Evidence and whether the court of appeals correctly applied the rule to pretrial statements admitted at the defendant's trial. We find that the court of appeals correctly applied the rule to this case, but clarify its construction of the scope of the rule. Rule 801(d)(1)(B) permits consistent, out-of-court statements to be admitted as nonhearsay if offered to rebut a charge of recent fabrication, improper influence, or motive only if such statements were made prior to the time a motive to fabricate arose.

## FACTS

¶ 2 The opinion of the court of appeals contains a thorough factual history, which we will not repeat here. *See State v. Bujan,* 2006 UT App 322, ¶¶ 2–13, 142 P.3d 581. In summary, K.B., daughter of Tina Binkerd and defendant Phillip Bujan, alleged that Bujan raped her in late 2001. At trial, the defense called into question K.B.'s credibility as a witness. During cross-examination of K.B., the defense identified several alleged inconsistencies between K.B.'s testimony at trial and certain statements she made in an April 2003 interview with Detective Daphne Oberg of the Salt Lake County Sheriff's Office. The defense alleged that K.B. fabricat-

ed the rape incident because she was angry at Bujan following a disciplinary incident that occurred in late 2001 and following an announcement by Bujan, also in late 2001, that he planned to reunite with a former spouse.[1]

¶ 3 At trial, following testimony by K.B. and Binkerd, the State indicated that it had three additional witnesses it wished to have testify, including Detective Oberg. The defense questioned whether it was appropriate for Detective Oberg to testify, suggesting that her testimony "would be hearsay to the extent she's putting on a prior inconsistent statement." The State replied that it "would like to have her testify to prior consistent statements." The trial court responded, "We'll see. That's fine. All right." After discussing an additional, unrelated procedural matter, the trial court recessed.

¶ 4 The record contains no additional discussion regarding whether or why Detective Oberg would testify before the State called her to the stand. Shortly into questioning by the State, defense counsel objected to the following question: "Let's talk about [the April 2003] interview with [K.B.]. What did you talk to [K.B.] about in the beginning?" Defense counsel said,

> Judge, I'm going to object. I'm not sure that—this is probably going to be duplicative to the extent that she is going to be asked to restate [K.B.'s] statements to her, would be hearsay. So unless there's some foundation as to the necessity of this testimony, I'd ask the court to exclude it.

¶ 5 The trial judge responded, "The question doesn't necessarily—this particular question doesn't necessarily involve a hearsay issue, but the hearsay rule does apply." Following the trial judge's comment, counsel for the State indicated why it believed Detective Oberg's testimony was admissible as follows:

> I'd be arguing *under Rule 801* this is a prior consistent statement that—[K.B.] has testified here today, and I believe the defense is trying to somehow discredit what she has said or attack whatever she has

---

1. Bujan and Binkerd divorced in 1997. From 1997 until early 2001, Bujan was largely absent from K.B.'s life. For most of 2001, Bujan regu-
larly spent time with K.B. and occasionally stayed overnight with her when Binkerd was out of town.

said, and Detective Oberg is here to show that there are consistent statements with the disclosure and with the rape.

(Emphasis added.) The trial court then allowed the State to continue questioning Detective Oberg. Defense counsel objected five additional times during Detective Oberg's testimony; two objections questioned the relevance of the testimony being elicited, and the other three objections suggested that the elicited testimony called for hearsay. Only one hearsay objection, regarding whether K.B.'s brother told Detective Oberg that K.B.'s behavior had changed, was sustained.[2] The State provided no foundational basis, other than its initial reference to rule 801, for the admission of Detective Oberg's testimony.

¶ 6 The jury found Bujan guilty of rape of a child and aggravated sexual abuse of a child. Bujan appealed the result to the Utah Court of Appeals on two grounds. First, Bujan argued that it was an abuse of discretion for the trial judge to admit Detective Oberg's hearsay testimony pursuant to rule 801(d)(1)(B). Bujan argued that rule 801(d)(1)(B) only allows admission of prior consistent statements made before a motive to fabricate arises and that K.B.'s statements to Detective Oberg were made after a motive (arising from either the disciplinary incident or Bujan's announcement that he was reuniting with a former spouse) to fabricate the rape arose. Second, Bujan argued that the admission of Detective Oberg's hearsay testimony resulted in prejudice. The court of appeals agreed with Bujan on both grounds, and, therefore, reversed and remanded the case for further proceedings. *Bujan,* 2006 UT App 322, ¶¶ 29, 33, 142 P.3d 581. We granted certiorari regarding the scope of admissibility of pretrial statements under rule 801(d)(1)(B).

## STANDARD OF REVIEW

¶ 7 "On certiorari, we review the court of appeals' decision for correctness, giving its conclusions of law no deference." *State v. Casey,* 2003 UT 33, ¶ 10, 82 P.3d 1106.

## ANALYSIS

¶ 8 The United States Supreme Court interpreted the scope of Federal Rule of Evidence 801(d)(1)(B), to which our rule is analogous, in *Tome v. United States,* 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). In that case, the defendant was charged with sexually abusing his daughter. Pursuant to rule 801(d)(1)(B), the trial court admitted certain out-of-court consistent statements made after an alleged motive to fabricate arose. The defendant appealed the admission of the statements, the U.S. Court of Appeals for the Tenth Circuit affirmed, and the defendant appealed that decision to the United States Supreme Court on writ of certiorari. The Supreme Court reversed, holding that rule 801(d)(1)(B) "permits the introduction of a declarant's consistent out-of-court statements to rebut a charge of recent fabrication or improper influence or motive only when those statements were made before the charged recent fabrication or improper influence or motive." *Tome,* 513 U.S. at 167, 115 S.Ct. 696. The *Tome* analysis and rule interpretation is directly on point in this case, and we agree with it. At trial, the State used Utah's rule 801(d)(1)(B) as its only foundation for the admission of Detective Oberg's testimony regarding K.B.'s consistent, out-of-court statements. K.B.'s interview with Detective Oberg, however, occurred after the alleged motive for K.B. to fabricate the rape allegation arose. Therefore, K.B.'s consistent statements were not made prior to the time the alleged motive to fabricate arose, as is required for admission under rule 801(d)(1)(B).

¶ 9 We recognize that there are rules that permit admission of consistent, out-of-court statements made after a motive to fabricate arises. In its brief before us, the State suggested two: admissibility under the common law for nonsubstantive purposes and nonsubstantive admissibility under the rule of completeness. Even if the evidence should have been admitted for rehabilitative purposes, however, the trial court erred in

2. In response to the four overruled objections, the trial judge permitted the State to continue for reasons having no bearing on the issue in question.

admitting the evidence substantively. We have recognized under common law the admissibility of prior consistent statements for rehabilitative purposes. *See State v. Sibert,* 6 Utah 2d 198, 310 P.2d 388, 391 (1957) ("[W]here there has been an attempt to impeach or discredit a witness, prior statements consistent with his present testimony may be offered to offset the impeachment."). In *Sibert,* we explained that such statements were admissible for rehabilitative purposes, and we cited *State v. Mares* as an example of such admissibility. *Id.* (citing *State v. Mares,* 113 Utah 225, 192 P.2d 861, 867 (1948)). In *Mares,* a portion of the witness' testimony was permitted to "show[ ] the doctor's original findings on the course of the bullet which was consistent with the evidence given by the doctor at the trial." 192 P.2d at 867. We held that this admission was not prejudicial because the cross-examination attempted to demonstrate that the doctor "had changed his theory on the course of the bullet since the time of his previous statement," and the portion of the autopsy report demonstrated that the doctor's position had not changed. *Id.* However, this case differs because the State requested and the trial court admitted Detective Oberg's testimony substantively under rule 801(d)(1)(B). No limiting instruction was provided to the jury that the testimony was only admitted for rehabilitative purposes. As such, the testimony was inappropriate hearsay and its admission improper.

¶ 10 Even if the testimony had been offered for rehabilitative purposes, it was still inappropriate to admit the entirety of the testimony. Only testimony that directly rebuts charges of recent fabrication is appropriate. *See State v. Thomas,* 777 P.2d 445, 449 (Utah 1989) (holding it was error to allow an officer to testify to the entire content of an interview when that testimony went beyond "simply rebutting ... charges" "'of recent fabrication or improper influence or motive'" (quoting Utah R Evid. 801(d)(1)(B))). Pursuant to the rule of completeness, we have held that the standard for admitting oral statements is "only admission of those things that are 'relevant and necessary to qualify, explain, or place into context the portion [of testimony] already intro-

duced.'" *State v. Cruz–Meza,* 2003 UT 32, ¶ 14, 76 P.3d 1165 (citation omitted). Here, the admission of Detective Oberg's recounting of her entire conversation with K.B. would likewise be inadmissible under the rule of completeness because it went beyond the information necessary to rebut the charges of recent fabrication. Detective Oberg testified to her entire conversation with K.B., recounting chronologically everything she could remember of what K.B. told her. Detective Oberg was not asked to complete or rebut any particular statements from K.B.'s prior testimony. Therefore, Detective Oberg's testimony should not have been admitted in its entirety for either substantive or rehabilitative purposes.

¶ 11 Rule 801(d)(1)(B) applies only to premotive, consistent, out-of-court statements. The purpose of rule 801(d)(1)(B) is to admit statements that rebut a charge of recent fabrication or improper influence or motive, not to bolster the believability of a statement already uttered at trial. *See Tome,* 513 U.S. at 157–58, 115 S.Ct. 696 ("The Rule speaks of a party rebutting an alleged motive, not bolstering the veracity of the story told."). In such a situation, premotive, consistent, out-of-court statements are considered nonhearsay and admitted both for rehabilitative purposes and, more importantly to the purpose of the rule, for their substance.

¶ 12 We take care in stating the scope of rule 801(d)(1)(B) because one statement in the court of appeals' opinion suggests that the rule's coverage might be broader than it actually is. The court of appeals stated, "We begin our analysis by noting that Defendant correctly states that rule 801(d)(1)(B) as applied under the Federal Rules of Evidence does not allow postmotive statements to be admitted for a rehabilitative purpose." *State v. Bujan,* 2006 UT App 322, ¶ 26, 142 P.3d 581. Rule 801(d)(1)(B) does not bar admission of all postmotive statements seeking to be admitted for rehabilitative purposes. As discussed above, there are other rules available, if the proper conditions are met, under which postmotive statements can be admitted. Rule 801(d)(1)(B) merely creates a narrow avenue by which premotive statements

are considered nonhearsay and can be admitted for their substance.

## CONCLUSION

¶ 13 Because K.B.'s out-of-court statements to Detective Oberg were made after a motive to fabricate the allegations of rape arose, they were not admissible for their substance pursuant to rule 801(d)(1)(B). The decision of the court of appeals is affirmed.

¶ 14 Associate Chief Justice DURRANT, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.